Argued April 21, affirmed April 28, 1914.

## CHURCHILL *v.* GRANTS PASS.

(141 Pac. 164.)

**Municipal Corporations—Legislative Control—Constitutional Provisions.**

1. Article IV, Section 1a, of the Constitution, reserving to the legal voters of every municipality the powers of initiative and referendum as to all local, special and municipal legislation, and Article XI, Section 2, granting to the legal voters of every city and town power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the state, do not alter the relations of municipal corporations to the state, but leaves them mere agencies of the state, which may by general laws control them even to the extent of amending their charters.

**Municipal Corporations—Definition.**

2. Certain attributes of state sovereignty may be delegated to municipal corporations, as a "municipal corporation" is a body corporate and politic, established by law to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town or district incorporated.

**Constitutional Law—Construction of Provisions—Grant or Limitation of Power.**

3. The state Constitution is not a delegation of power to the legislative branches of the government, but a limitation of power otherwise plenary.

Municipal Corporations—Delegation of Power—Powers and Functions
   —Building and Owning Railroad.
   4.   The State may lawfully delegate to any of its municipal cor-
porations its own power, which the Constitution does not prohibit, of
building and owning railroads; the only question being whether the
proposed legislation is for a public purpose.

Municipal Corporations—Powers and Functions—Public Purpose.
   5.   The determination by the citizens of a municipality by vote at
an election in favor of bonding for the building of a railroad from
the city to a point ten miles distant will not be disturbed by the
Supreme Court on the ground that the expenditure is not for a pub-
lic purpose.
         [As to implied power of municipality to issue bonds, see note
      in Ann. Cas. 1913E, 37.]

Municipal Corporations—Powers and Functions—Constitutional Pro-
   vision.
   6.   A contract by a city with an individual for the sale or lease
to him of a railroad to be built by the city upon its completion does
not violate Article XI, Section 9, of the Constitution, providing that
no municipal corporation shall become a stockholder in any joint-
stock company, corporation or association, or raise money for or
loan its credit to, or in aid of, any such company, corporation or
association.

From Josephine: FRANK M. CALKINS, Judge.

In Banc.    Statement by MR. CHIEF JUSTICE McBRIDE.

This is a suit brought by E. L. Churchill, as a citizen
and taxpayer of the City of Grants Pass, for an injunc-
tion restraining the defendant city and its officers from
carrying into effect certain charter amendments au-
thorizing the issue and sale of $200,000 of bonds for
the purpose of constructing a line of railroad from the
City of Grants Pass, Oregon, in a southerly direction,
a distance of about 10 miles, to the town of Wilder-
ville, in Josephine County. The complaint recites the
incorporation of the city; that the assessed valuation
of its taxable property in 1913 was $3,005,728.76, and
that it has a population exceeding 5,000; that its
charter was granted February 16, 1901, by the legis-
lative assembly, and that such charter is the present
charter with the exception of six amendments adopted
by the people since said time; that Chapter 283 of the
Laws of 1913 was enacted by the legislative assembly,

which is entitled "An act to authorize incorporated cities and towns to acquire, build, own and operate water systems or waterworks for supplying water for domestic use and for irrigation, railways for transportation of freight and passengers within and without their corporate limits," etc.; and that said act is unconstitutional and void. The complaint then recites that, under the authority granted in said act to construct and operate railways for transportation of freight and passengers, a special election was called by the defendant city, and held on the 10th day of February, 1914, at which election there was submitted certain amendments to the charter of the city, all of which are set forth in the complaint, but which amount to a repeal of certain parts of the charter, and authorizing the city council to issue bonds of the city in the sum of $200,000, to be used in retiring certain warrant indebtedness and in completing the construction of a proposed line of railroad from Grants Pass to Wilderville. It is recited in the complaint that, prior to holding such election, certain terminal grounds with the City of Grants Pass and rights of way were acquired and paid for by general fund city warrants, and likewise certain rights of way outside of the said city, and that, after acquiring said terminals and rights of way, a large sum of money was raised by issuing warrants authorized by the city council, which money was expended in grading and doing other work along such rights of way both within and without the said city; that the city council has adopted ordinances providing for the issuance and sale of $200,000 of bonds for the purpose of carrying out the provisions of the charter amendments and completing the construction of the ten or eleven miles of railroad. The complaint also recites that in September, 1913, a contract was entered into with one J. F. Reddy, wherein

the said J. F. Reddy agreed to sell the $200,000 of bonds, which the city proposed to issue, and expend the same in the construction of the proposed railroad, and for other things enumerated therein, and also pending the election to sell or purchase such warrants as might be necessary to carry on the work of grading the railroad. At the same time another contract was entered into between the defendant city and the said J. F. Reddy, the effect of which is that upon the completion of the railroad to be constructed by the city it will lease or sell the same to the said J. F. Reddy upon terms agreed upon in said contract; and it was also provided therein that the said J. F. Reddy should be paid a commission of 10 per cent upon the cost of construction for his services in constructing the said line of road. The complaint further sets forth that on December 4, 1913, a proposition was made by Keeler Bros., of Denver, Colorado, to sell $200,000 of bonds to be authorized, and which were authorized at the election of February 10, 1914, and as a commission for such sale they were to receive the sum of $22,000, and that the said J. F. Reddy thereupon released the city of its obligation to pay him 10 per cent upon the cost of construction of the said road. The complaint then mentions the various proceedings had by the city council subsequent to the election of February 10, 1914, all of which depend upon the legality of the following matters: (1) The constitutionality of the act of the legislative assembly granting to cities and towns the right to construct railroads within and without their corporate limits; (2) the legality of the contract with Keeler Bros., to pay a commission of $22,000, and the release of the 10 per cent agreed to be paid the said J. F. Reddy. The answer of defendants and the reply thereto having been filed and the facts stipulated, the court found that the proceedings leading up to the

bond issue were in all respects regular and valid, and a decree was rendered dismissing the suit, from which plaintiff appeals.                                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Asa C. Hough.*

For respondent there was a brief and an oral argument by *Mr. H. D. Norton.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

This proceeding raises the following questions: (1) Had the legislature power to delegate to a municipality the authority to construct a railroad within and without its boundaries? (2) Was the assumption of the power to construct and operate a steam railroad within and without the boundaries of the city such local, special and municipal legislation as is provided to be delegated to municipalities by Article IV, Section 1a, of the Oregon Constitution? (3) Was the amendment of the municipal charter within the power granted to municipalities by Article XI, Section 2, of the Constitution of Oregon? (4) Was the contract with J. F. Reddy, in its general scope and import, an evasion of the limitation imposed by Article XI, Section 9, of the Constitution of Oregon, prohibiting municipal corporations from loaning their credit to or in aid of any company, corporation, or association? (5) Should special improvement bonds issued under the Bancroft Bonding Act be included in the computation of the city's general indebtedness in considering the limitation of indebtedness imposed by the amendment of this charter? (6) Is the construction and operation of a railroad a public or municipal purpose which can lawfully be delegated to a municipality?

1–4. This delegation of rights as to local self-government does not alter the relation of municipal corporations to the state, but leaves them, as they were before, mere agencies of the state, which may by general laws control all its municipalities even to the extent of amending their charters: *David* v. *Portland Water Committee,* 14 Or. 98 (12 Pac. 174); *City of McMinnville* v. *Howenstine,* 56 Or. 451 (109 Pac. 81, Ann. Cas. 1912B, 1293); *Straw* v. *Harris,* 54 Or. 424 (103 Pac. 777). That certain attributes of the sovereignty of the state may be delegated to such corporations necessarily must be true, as "a municipal corporation is a body corporate and politic, established by law to share in the civil government of the country, but chiefly to regulate and administer the local or internal affairs of the city, town, or district incorporated": Words and Phrases, tit. "Municipal Corporations." Our state Constitution is not a delegation of power to the legislative branches of the state government, but a limitation on power otherwise plenary: *State* v. *Cochran,* 55 Or. 157 (104 Pac. 419, 105 Pac. 884). There is nothing in our Constitution which prohibits the state from building and owning a railroad; in fact, such a road built and owned by the state has been in operation at Celilo on the Columbia River for many years. What the state may do in this respect, it may lawfully delegate to any of its municipal corporations; and the only question is whether the proposed legislation is for a public purpose.

5. That the construction of a railroad by the state or by a municipality is a public purpose seems to be settled by the reasoning of the court in *Olcott* v. *Supervisors,* 16 Wall. 678 (21 L. Ed. 382). The reasoning in that case would seem to cover all cases of railroad construction by municipalities, whether wholly within the boundaries of such municipality or not, if

the purpose of such improvement is for the general welfare, convenience, health, or comfort of its citizens: Dillon, Mun. Corp. (5 ed.), § 1294; *People ex rel. Murphy* v. *Kelly,* 76 N. Y. 475. In the case last cited it is cogently observed:

"The legislature, when legislating in view of this constitutional limitation, must determine in the first instance what is a municipal purpose. Its decision is not, however, final. When its act is challenged as in conflict with this constitutional limitation, the courts must determine whether debt is authorized to be incurred for a purpose not municipal. But as the dividing line between what is a municipal purpose, and what is not, is in many cases shadowy and uncertain, great weight should be given by the courts to the legislative determination, and its action should not be annulled unless the purpose appears clearly to be one not authorized. As said by Judge FOLGER in *Weismer* v. *Village of Douglas,* 64 N. Y. 91 [21 Am. Rep. 586], 'If the purpose designed by the legislature lies so near the border line that it may be doubtful on which side of it it is domiciled, the courts may not set their judgment against that of the lawmakers.' "

In the case at bar we have not only the judgment of the legislature as to the general authority of the cities of the state to build railroads leading into their municipal limits, but we have the deliberate judgment of the citizens of the municipality itself expressed at the polls as to the necessity or propriety of the proposed expenditure for that purpose. The citizens and taxpayers of Grants Pass know, or ought to know, whether or not this proposed expenditure is necessary, and it should require a stronger showing than is made here to induce us to decide that we are better qualified to judge of the necessity of this expenditure than those who of necessity must furnish the money to meet it. Bearing in mind the firmly established doctrine that

courts will not declare a law invalid unless its unconstitutionality is clear and free from reasonable doubt, we are of the opinion that the charter provisions in question in this case are valid and not in conflict with any constitutional inhibition.

6. Another contention is that the contract with J. F. Reddy for the sale or lease of the road to him under certain conditions when it shall have been completed is in violation of Article XI, Section 9, of our state Constitution, which section reads as follows:

"No county, city, town, or other municipal corporation, by vote of its citizens or otherwise, shall become a stockholder in any joint-stock company, corporation, or association whatever, or raise money for, or loan its credit to, or in aid of, any such company, corporation, or association."

The proposed road has no capital stock, and therefore the city cannot be and does not propose to become a stockholder. It is not being constructed by any private corporation, company or association, and therefore the city cannot and does not propose to aid any such organization or loan its credit to it. The proposition is to build and own a road for the benefit of its citizens. That it may when built lease or sell it does not alter the fact that primarily it is a public improvement for a public purpose. The objection is not tenable.

It may be observed in a general way, as to the relevancy of the cases cited from other states, and particularly from the State of New York, that the Constitutions of these states contain, in addition to the section last quoted, an additional clause substantially to this effect:

"Nor shall any such city, county, town or village be allowed to incur any indebtedness except for county, town, or village purposes."

Our Constitution was adopted several years after that of the State of New York, and Article XI, Section 9, is copied almost *verbatim* from Article VIII, Section 11, of the New York constitution, omitting the clause last quoted. This omission is significant as indicating an intention to leave the authority of the municipalities of this state to contract indebtedness somewhat broader than that of states having the latter clause in their organic charters.

We have examined the charter amendments and ordinances touching the proposed bond issue, and find that they are regular and valid in every respect and that they were regularly and legally adopted.

Therefore the findings and decree of the Circuit Court are in all things affirmed.            Affirmed.

Mr. Justice Burnett and Mr. Justice McNary took no part in the consideration of this case.