Argued January 20; affirmed February 2, 1943

# CENTRAL LINCOLN PEOPLES' UTILITY DISTRICT *v.* SMITH ET AL.

(133 P. (2d) 702)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, LUSK and HAY, Associate Justices.

*W. H. Waterbury,* of Toledo, and *Jno. W. Shuler,* of Portland, for cross-appellant.

*G. K. Litchfield,* of Newport, for appellant.

BELT, J. The Board of Directors of Central Lincoln Peoples' Utility District commenced this special proceeding under and by virtue of § 114-259, O. C. L. A., as amended by chapter 287, Laws of Oregon for 1941, to obtain judicial determination of the legality of an ordinance enacted by the board directing issuance and sale of certain revenue bonds.

The Central Lincoln Peoples' Utility District embraces an area of approximately 18 square miles, including the city of Newport. Soon after the organization of the district, the directors thereof entered into a tentative agreement with the West Coast Power Company to purchase for $735,000 its electric transmission lines extending along the Oregon coast from Gleneden Beach in Lincoln county to North Bend, Coos county— a distance of about 94 miles. The district did not have a hydroelectric power plant but proposed to secure its electric energy from the Bonneville Power Administration.

The contract to purchase the electric system of the West Coast Power Company was approved by the Oregon Hydroelectric Commission, and the people, on March 7, 1942, at a special election, voted in favor of the issuance of revenue bonds in the sum of $850,000.

The entire proceedings relative to the organization of the district, the contract to purchase the electric transmission system, and the proposed issuance of the bonds are set forth at length in the petition.

To this petition the defendants, who are residents and voters in the district, interposed an answer alleging in substance that the proceedings are invalid for the following reasons: (1) The district proposes to acquire an electric system which does not include a plant for the development of water power or electric energy. (2) Callable and non-callable bonds are included in the same issue. (3) The district is required to pay interest in addition to that provided by the coupon rate when bonds are called prior to maturity. (4) The proposed sale and distribution by the district of electric energy is principally in territory beyond the boundaries of the district. (5) The ordinance authorizing the bond issue provides for the pledging of all revenues of the district.

The circuit court, in its decree, sustained the validity of the organization proceedings of the district, the contract to purchase the electric system of the West Coast Power Company, and the issuance of the revenue bonds in question, excepting that provision therein relating to the payment of additional interest.

Subsequent to the rendition of the decree in the lower court and prior to the filing of appellants' brief herein, this court in *Ollilo v. Clatskanie Peoples' Utility District, ante* p. 173, 132 P. (2d) 416, on December 22, 1942, decided adversely to appellants' contentions the first three of the above propositions of law. It is conceded that there remain only two questions for decision, viz, (1) Whether the district can thus engage in the sale and distribution of electric energy beyond

its boundaries and (2) whether the district can pledge in payment of the bonds only the revenue derived from the district and not that obtained beyond its corporate limits.

As said in the Ollilo case:

"The source of power to create municipal corporations known as Peoples' Utility Districts is found in Art. XI, § 12 of the Constitution of Oregon —an amendment submitted by initiative petition and approved on November 4, 1930, by vote of the people —which, so far as is material herein, provides:

'People's utility districts may be created of territory, contiguous or otherwise, within one or more counties, and may consist of an incorporated municipality, or municipalities, *with or without unincorporated territory,* for the purposes of supplying water for domestic or municipal purposes; for the development of water power and/or electric energy; and for the distribution, disposal and sale of water, water power and electric energy. Such districts shall be managed by boards of directors, consisting of five members, who shall be residents of such districts. Such districts shall have power:

✳        ✳        ✳        ✳        ✳        ✳        ✳

(c) To issue, sell and assume evidences of indebtedness.

(d) To enter into contracts.

✳        ✳        ✳        ✳        ✳        ✳        ✳

(g) To acquire, develop, and/or otherwise provide for a supply of water, water power and electric energy.

Such districts may sell, distribute and/or otherwise dispose of water, water power and electric energy *within or without* the territory of such districts.

The legislative assembly shall and the people may provide any legislation that may be necessary

in addition to existing laws, to carry out the provisions of this section.' '' (Italics ours.)

In keeping with the intention of the people in enacting the above Constitutional amendment, the legislature provided that (§ 114-203, O. C. L. A.):

"Peoples' utility districts may be created as herein provided and, when so created, may exercise all of the powers herein conferred. Such peoples' utility districts may consist of territory, contiguous or otherwise, within one or more counties, and may consist of a municipality or municipalities, *with or without unincorporated territory. * * *''* (Italics ours.)

The legislature further provided in § 114-245, O. C. L. A., as amended by chapter 287, Laws of Oregon for 1941, that utility districts have the power, among other things, "to distribute, sell and/or otherwise dispose of water, waterpower and electric energy, *within or without the territory of such districts.*" (Italics ours.)

Appellants concede that the utility district in question has the right, by virtue of the Constitution and the statute, to sell and distribute electric energy beyond its boundaries, but contend that such sale and distribution can be only incidental to the major operations within the district.

██ We are unable, under the law, to place such a restriction upon the operations of a utility district. The authority of a utility district to operate "within or without" its boundaries is conferred upon it in plain, simple, unambiguous language. There is no need of construction when the language is reasonably susceptible of only one meaning. As to whether the welfare of the state is promoted by authorizing utility districts thus to extend their operations is a legislative, and not a judicial question.

*Yamhill Electric Co. v. City of McMinnville*, 130 Or. 309, 274 P. 118, 280 P. 504, is not to the contrary. In fact, the reasoning of the court supports the conclusion reached here. There, the plaintiff, a public utility corporation, sought to enjoin the city, which owned and operated a hydroelectric plant, from selling and distributing electric power to a golf club about 3½ miles distant from the corporate limits of the city. The charter of the city of McMinnville authorized it to sell and distribute electric energy to the "citizens of said city and vicinity." The court sustained the right of the city thus to extend its operations and dismissed the injunction. In construing § 3770, Or. L. (§ 114-121, O. C. L. A.), authorizing incorporated cities to "sell, supply, and dispose of" electricity "within or without" the limits of such incorporated city, the court said that such language "would seem to give municipalities *unlimited authority* to engage in the business of dealing in electric energy (if authorized by their charters) to the same extent as a private corporation could do under the same circumstances." (Italics ours.)

■ That a municipal corporation may operate beyond its boundaries without restriction if the legislature grants such authority, also see *Churchill v. Grants Pass,* 70 Or. 283, 141 P. 164; *Pearce v. Roseburg,* 77 Or. 195, 150 P. 855; *Central Power Co. v. Nebraska City,* 112 F. (2d) 471; *Kansas Gas & Electric Co. v. City of McPherson,* 146 Kan. 614, 72 P. (2d) 985. As said by the court in the case last cited:

"* * * Whether cities owning or operating an electric utility should be authorized to extend transmission lines and sell electricity to consumers outside the city without a limitation being placed on the distance such lines can be extended, or the class of consumers to whom sales can be made, is a ques-

tion of statecraft to be determined by the Legislature; not by the courts.''

■ There is no merit in the contention that the plaintiff utility district can pledge only revenues received from its operations within the boundaries of the district. Section 114-255, O. C. L. A., which provides that the district ''may issue and sell revenue bonds so conditioned as to be paid solely from that portion of the revenues *derived from the district*'', must be considered in the light of the entire Peoples' Utility District Law. In other parts of the same section, we find this significant language:

> ''All revenue bonds issued under the provisions of this act shall contain a clause that the same are payable solely from revenues *derived by* the district from its operations, remaining after paying from said revenues all expenses of operation and maintenance, including taxes.'' (Italics ours.)

It is plain that the district can operate beyond its boundaries. It would, therefore, seem absurd to hold that the district can pledge only that particular portion of its revenues derived from operations within its boundaries. If the application of the revenues were so restricted it would simply mean that the district would be unable to operate beyond its boundaries.

The decree is affirmed excepting that part thereof relating to the payment of additional interest which is reversed.