Argued December 2, 1968, affirmed February 26, 1969

MILES, *Appellant, v.* CITY OF EUGENE,
*Respondent.*

451 P. 2d 59

*John E. Jaqua,* Eugene, argued the cause for appellant. On the brief were Jaqua, Wheatley & Gardner, Eugene.

*Windsor Calkins,* Eugene, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and MCALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

## DENECKE, J.

The defendant city entered into an agreement on July 3, 1968, with a private electric utility to share expenses for a study of the construction and operation of nuclear power facilities. In 1967 the Oregon Legislature empowered cities to enter into such agreements. ORS 225.450 et seq.

The plaintiff is a resident of the city and a rate payer of the city's division which sells electric energy. Plaintiff contends that the agreement of the city and the empowering legislation are contrary to Art XI of the Oregon Constitution. The trial court held for the defendant, and plaintiff appeals.

The Eugene Water & Electric Board (EWEB) is a department of the city of Eugene; however, it operates independently through an elected Board of Commissioners. EWEB generates and distributes electric power. City revenues cannot be used by EWEB and EWEB cannot levy taxes.

ORS 225.450 et seq. declares that it is in the public interest for cities and private electric utilities, and others, to jointly plan, construct and operate thermal power facilities. ORS 225.480 provides that cities are liable only for their own acts and that no money supplied by the cities shall be credited to the account of any other participant in a venture of this kind. ORS 225.490 provides that a city may raise money for such a venture by selling revenue bonds, pledging payment from the revenues of the venture. It further provides that money so raised and used shall be considered money used for a public purpose.

The agreement entered into by EWEB and the private utility here provides for a study of the feasibility of a cooling pond by an apparently independent consultant. EWEB agrees to contribute $4,000 as its share of the cost of the study.

EWEB proposes to put to a vote of the people a charter amendment authorizing the sale of $225,000,000 in bonds to be repaid solely from the revenues of EWEB and not from property of EWEB or the city or from taxes collected by the city. In addition, the amendment provides that EWEB would be authorized to finance, construct, own and operate, jointly with a private utility or with others, a nuclear power plant.

The proposed agreement and the enabling legislation do not specifically state the reasons for such joint activity. However, the legislative history of the enabling statutes, ORS 225.450 et seq., does. The

legislature was informed that thermal sources of electric energy, particularly nuclear, soon will be needed in the Pacific Northwest; that nuclear plants are extremely expensive for any single utility to construct; and that although the electric energy soon will be needed, it would be difficult for any one utility to immediately utilize the tremendous energy put out by one nuclear plant.

Section 7, Art XI, Oregon Constitution, is captioned, "Credit of State not to be loaned  *  *  *."①

■ We have held that § 7 is not a restriction upon the obtaining of funds by a municipality by the sale of revenue bonds, as distinguished from general obligation bonds. *McClain v. Regents of the University,* 124 Or 629, 635-638, 265 P 412 (1928); *Moses v. Meier,* 148 Or 185, 189-193, 35 P2d 981 (1934); *Carruthers v. Port of Astoria,* 249 Or 329, 438 P2d 725 (1968). The stipulation of facts was amended and now states:

"The bonds shall include a statement on their face to the effect:

"(1) That they do not in any manner consti-

---

① "Credit of State not to be loaned—limitation upon power of contracting debts. The Legislative Assembly shall not lend the credit of the state nor in any manner create any debt or liabilities which shall singly or in the aggregate with previous debts or liabilities exceed the sum of fifty thousand dollars, except in case of war or to repel invasion or suppress insurrection or to build and maintain permanent roads; and the Legislative Assembly shall not lend the credit of the state nor in any manner create any debts or liabilities to build and maintain permanent roads which shall singly or in the aggregate with previous debts or liabilities incurred for that purpose exceed one percent of the true cash value of all the property of the state taxed on an ad valorem basis; and every contract or indebtedness entered into or assumed by or on behalf of the state in violation of the provisions of this section shall be void and of no effect. This section does not apply to any agreement entered into pursuant to law by the state or any agency thereof for the lease of real property to the state or agency for any period not exceeding 20 years and for a public purpose."

tute a general obligation of the Eugene Water & Electric Board, or of the City of Eugene, nor create a charge upon the tax revenues of said city nor of any revenues or property of said city or property of said Board but are payable solely from the general revenues of the electric utility system of the city * * *."

■ Plaintiff also asserts that the entire transaction is invalid because it involves the use of public funds for a private purpose. As we observed in *Carruthers v. Port of Astoria,* supra (438 P2d at 730), this argument is probably answered by the holding that the funds obtained from the sale of revenue bonds are not public funds within the meaning of the prohibition. In addition, there is some question whether there is any judicial rule restricting the use of public funds for public purposes apart from the specific restrictions in Art XI of the Oregon Constitution. 66 Harv L Rev 898, 900-904 (1953). Assuming there is such judicial rule, we hold that the joint planning, construction and operation of a nuclear power plant by EWEB is a public purpose. As stated, the legislative history reflects the community need. We stated in *Carruthers v. Port of Astoria,* supra (438 P2d at 730):

" 'The only valid criterion would seem to be whether the expenditures are sufficiently beneficial to the community as a whole to justify governmental involvement; but such a judgment is more appropriate for legislative than judicial action. The judiciary should invalidate expenditures only where reasonable men could not differ as to their lack of social utility.' Note, 66 Harv L Rev 898 at 903 (1953)."

The joint venture is also attacked as being contrary to § 9, Art XI, of the Oregon Constitution. Sec-

tion 9 as adopted in the original Constitution of 1859 provided:

> "Limitations on powers of county or city to assist corporations. No county, city, town or other municipal corporation, by vote of its citizens, or otherwise, shall become a stockholder in any joint company, corporation or association, whatever, or raise money for, or loan its credit to, or in aid of, any such company, corporation or association. * * *"[2]

Section 9 prohibits a city becoming a stockholder in a corporation, raising money for a corporation, or lending its credit to or in aid of a corporation. Does this prohibition prevent EWEB raising its share of the funds by revenue bonds and planning, constructing and operating a generating plant which it will own jointly with a corporation?

■ This section was also in issue in *Carruthers v. Port of Astoria,* supra (438 P2d 725), and held not to be an obstacle. In that case the Port proposed to raise funds by the sale of revenue bonds. With the funds the Port was going to build an aluminum reduction plant, lease it to a private company, and grant the

---

[2] It was amended to additionally provide:

"* * * Provided, that any municipal corporation designated as a port under any general or special law of the state of Oregon, may be empowered by statute to raise money and expend the same in the form of a bonus to aid in establishing water transportation lines between such port and any other domestic or foreign port or ports, and to aid in establishing water transportation lines on the interior rivers of this state, or on the rivers between Washington and Oregon, or on the rivers of Washington and Idaho reached by navigation from Oregon's rivers; any debts of a municipality to raise money created for the aforesaid purpose shall be incurred only on approval of a majority of those voting on the question, and shall not, either singly or in the aggregate, with previous debts and liabilities incurred for that purpose, exceed one per cent of the assessed valuation of all property in the municipality."

private company an option to purchase the plant at the end of 25 years for a nominal balance. We held that this did not amount to raising money for a private business or loaning credit to, or in aid of, the private company. Likewise, the proposal in this case would not come within the constitutional prohibition against raising money or loaning credit. Money coming from revenue bonds and not from tax money does not fall within the prohibition.

That part of the constitutional section prohibiting a city becoming a stockholder in a corporation was not involved in *Carruthers v. Port of Astoria,* supra (438 P2d 725), but is raised here.

In *Churchill v. Grants Pass,* 70 Or 283, 141 P 164 (1914), the city amended its charter to permit raising money by the sale of bonds in order to build a railroad. Grants Pass had contracted with one Reddy that the latter would sell the bonds, construct the railroad, and then lease or buy it from the city. The court seemingly construed the constitutional limitation here involved strictly and stated: "The proposed road has no capital stock, and therefore the city cannot be and does not propose to become a stockholder." 70 Or at 290.

This court has also held that the constitutional limitation does not prevent a county becoming a tenant in common of real property with a private person. *Security Co. v. Baker County,* 39 Or 396, 65 P 369 (1901). That decision is more decisive on the issue here present because the opinion discusses an Ohio decision, *Ampt (Alter) v. City of Cincinnati,* 56 Ohio St 47, 46 NE 69 (1897), which held that a constitutional provision similar to that of Oregon prohibited a city from joint ownership with a private corporation of a waterworks which was to be operated solely

by the city. This court expressly rejected the reasoning of the Ohio court as not being the kind of evil the Oregon Constitution was intended to prohibit.[9] 39 Or at 404-405. On the other hand, the court stated Art IX was to prohibit a municipality from being a stockholder in a manufacturing plant or a railroad.

We summarized the intent of the constitutional prohibition in *Johnson v. School Dist. No. 1,* 128 Or 9, 12, 270 P 764, 273 P 386 (1929), stating: "This constitutional provision was added to the fundamental law of the state  *  *  *  to prevent the investment of public funds in private enterprises."

The most recent judicial statement on this problem was made by Mr. Chief Justice Weintraub in *Whelan v. N. J. Power & Light Co.,* 45 NJ 237, 212 A2d 136 (1965). New Jersey has a constitutional provision similar to § 9, Art XI. The New Jersey Constitution states that no city shall " 'be directly or indirectly the owner of, any stock or bonds of any association or corporation.' " 45 NJ at 244. Jersey City operates a water supply system. It contracted with a private utility whereby the city would erect two reservoirs. The utility would pump water from the lower to the upper reservoir and the water would be released from the upper reservoir to flow through the utility's hydroelectric plant. The city would own the reservoirs and the utility the hydroelectric plant. The city would finance its part of the venture by general revenue bonds.

---

[9] Subsequently, in Hunter v. Roseburg, 80 Or 588, 602, 156 P 267, 157 P 1065 (1916), this court, using the correct name of the case, Alter v. Cincinnati, apparently not knowing that this court had earlier refused to find the case persuasive, cited and quoted from the case approvingly as a statement of the general intent of a constitutional provision such as §§ 7 and 9.

The court observed:

"The case at hand actually presents none of the difficulties discussed in *Roe v. Kervick,* for here the municipality entered into a bargain solely for its own dollar profit. It decided it would accomplish more and at a lesser unit cost if it so arranged its project that a public utility could simultaneously advance its separate interests. In other words, we do not have the classic situation of public money or credit funneled into private hands to enable the private operator to supply something the public needs. * * *

"The intervenor nonetheless contends the constitutional provisions forbid a 'union' of public and private properties. He refers to *Alter v. City of Cincinnati* * * * [the case which this court refused to follow in our opinion in Security Co. v. Baker County, supra (39 Or 396)] * * *.

"There are some cases which bar a so-called partnership or joint venture by government and private interests in the ownership or operation of a project. See 37 *Am. Jur., Municipal Corporations* § 135 p. 751; 15 *McQuillin, Municipal Corporations (3d ed.* 1950) § 39.30, *p.* 92. Such cases seemingly mean that, however public the purpose and however defensible the use of public funds to achieve it through arrangements with private sources, still the arrangement may not take the form of a partnership or joint enterprise involving either a sharing of the underlying ownership or a sharing in the operating experience.

"It is not immediately clear why this limitation should be found if the public expenditure does not otherwise offend the constitutional ban against the use of property or credit. Our Constitution does not say its prohibitions shall depend upon the form a transaction takes. Sundry arrangements have been made between public and private interests to achieve the desired result. * * *" 45 NJ at 247-248.

The court went on to say it did not have to answer this problem as the city and the utility each owned separately their respective facilities.

In *Sprague v. Straub,* 252 Or 507, decided this date, we stated that Art XI, § 9, prohibits cities becoming stockholders in private corporations. We did not state or infer what, if any, other relationship between a municipality and a private corporation was prohibited.

Other state constitutions expressly prohibit relationships in addition to that of stockholder to corporation. Examples of such language are as follows: "Neither the state, nor any county, city * * * shall * * * become a subscriber to, or shareholder in any corporation or company, or a joint owner with any person, company or corporation * * *." Colorado Constitution, Art XI, § 2. Art IX, § 7, of the Arizona Constitution and Art XIII, § 1, of the Montana Constitution are almost identical to the Colorado constitutional provision.

The omission of the phrase "joint owner" from § 9 is another indication that § 9 is intended only to prohibit a city from being a stockholder.

■ We conclude that § 9, Art XI, does not prohibit a city from using funds raised from revenue bonds to acquire and operate a nuclear power plant jointly with a private utility.

In this case and in *Carruthers v. Port of Astoria,* supra (438 P2d 725), the parties attacking the constitutionality of the proposals relied strongly upon *Hunter v. Roseburg,* 80 Or 588, 156 P 267, 157 P 1065 (1916). That case is distinguishable because in that case the city was proposing to finance the construction of a railroad with general obligation bonds payable from general tax levies.

Affirmed.