Argued March 2, affirmed June 18, reconsideration
denied July 24, petition for review denied September 18,
1979, 287 Or 409

# THUNDERBIRD MOTEL, INC., et al, *Appellants,*
## *v.*
# CITY OF PORTLAND, et al, *Respondents.*
## (Trial Court No. A77-09-13031, CA No. 11091)

596 P2d 994

Mark McCulloch, Portland, argued the cause for appellants. With him on the briefs were Powers & McCulloch, and Stuart W. Hill, McClasey, Paauwe & Wilcox, Portland.

William B. Crow, and Donald R. Stark, Portland, argued the cause for respondents. With them on the brief were Miller, Anderson, Nash, Yerke & Wiener, Richard A. Cantlin, Jr., and Robert L. Hurtig, Portland.

Before Thornton, Presiding Judge, and Lee and Gillette, Judges.

GILLETTE, J.

[698-b]

**GILLETTE, J.**

In July, 1977, the City of Portland, through the Portland Development Commission (Commission), and Moran Construction Co. (Moran) entered into a contract pursuant to which the City sold Moran a block in the South Auditorium Urban Renewal Project on which Moran is constructing a hotel. The contract provides that the City is to build tennnis courts on a block adjacent to the hotel site; that the City will construct a skybridge between the hotel and a parking structure on a nearby block; that the City will subsequently reach agreement with Moran or its successors pursuant to which the latter will manage and operate the tennis courts and skybridge as public facilities; and that the City will develop the waterfront area in the vicinity of the hotel to complement the other improvements.

Thunderbird Motel Inc.'s original complaint alleged *inter alia* that the construction of the skybridge "at public expense for private use" is prohibited by Article XI, section 9 of the Oregon Constitution, that the City and Commission lack "jurisdiction" to grant the management of the publicly owned skybridge and tennis courts to private persons, and that the City's agreement to develop the waterfront property is too vague to be enforceable.

The trial court granted partial summary judgment for the defendants on all issues presented by Thunderbird's original complaint. Earlier, however, the trial court had allowed Thunderbird's motion to file an amended complaint. Thunderbird was joined as a plaintiff in the amended complaint and in a second amended complaint by two individuals who do business as the Red Lion Motor Inn at Portland Center. Those later complaints allege, *inter alia,* that the planned location of the hotel and of the tennis courts violates the land use plan for the South Auditorium Urban Renewal Project and that the price for which the City sold the hotel site to Moran was less than the

minimum amount the applicable Oregon statute requires. After trial, the court below ruled for the defendants and entered a decree of dismissal. Plaintiffs appeal, and we affirm.

Before reaching the merits of this case, we must first consider defendants' contentions that this court does not have jurisdiction over some or all of the issues the plaintiffs raise, and that the plaintiffs do not have standing to bring the appeal. Defendants' contentions are based primarily on the somewhat unusual procedural history of the litigation. The original complaint was filed by the plaintiff Thunderbird Motel, Inc., as the sole plaintiff. Defendants filed their motion for summary judgment on October 25, 1977. Three days later, the trial court granted Thunderbird's motion to file an amended complaint. In November, 1977, the trial court granted partial summary judgment for the defendants as to all issues raised in Thunderbird's original complaint, but continued the case for further proceedings on the matters to be presented by the amended complaint.

In December 1977, Thunderbird, joined by the additional plaintiffs who are now parties to the case, filed an amended complaint alleging the same grounds for the contract's illegality which Thunderbird had alleged in its original complaint, and also alleging the other matters we have described. Defendants moved and the court ordered that the allegations in the amended complaint which had previously been disposed of by the partial summary judgment order be stricken. In this appeal, the defendants do not assign as error the order striking those allegations. In February 1978, the second amended complaint was filed. After trial, the court ruled for defendants on the remaining issues in that complaint and entered its decree of dismissal.

██ On December 27, 1977, Thunderbird filed a notice of appeal from the partial summary judgment which had been granted the preceding month. We dismissed

that appeal on March 17, 1978, because Thunderbird failed to file an appellant's brief. Defendants now argue that Thunderbird cannot bring this appeal because it has already had its appeal. Defendants further argue that none of the other plaintiffs can appeal from the partial summary judgment because they were not parties to the case at the time the partial summary judgment order was entered. Defendants conclude that if anything can be considered in this appeal, our review is limited to the matters which were not decided by the trial court's partial summary judgment order. We disagree. ORS 19.010 (2)(a) provides:

> "For the purpose of being reviewed on appeal the following shall be deemed a judgment or decree:
>
> "(a) An order affecting a substantial right, and which in effect determines the action or suit so as to prevent a judgment or decree therein."

The partial summary judgment order was not appealable under that definition, because the issues to be raised in the amended complaint remained to be determined, and no judgment or decree could be entered until the amended complaint was adjudicated.[1] *See Smallwood v. Erlandson,* 281 Or 699, 576 P2d 374 (1978); *cf.* ORS 18.125. The fact that

---

[1] This assumes, first, that a trial court can permit the amendment of a pleading while a motion for summary judgment is pending, and second, that an amended complaint may be filed after all matters raised by the original complaint have been adjudicated by summary judgment. Certain language in ORS 18.105 suggests that the filing of a summary judgment motion "freezes" the proceedings until the motion has been ruled on. However, idential language appears in Rule 56, Fed. R. Civ. P. The federal courts have consistently held that it is discretionary with the trial court whether to permit an amendment of pleadings after a motion for summary judgment has been filed. *See,* Annotation, 4 ALR Fed 123 (1970), §§ 15, 17. The authorities cited in the same Annotation, particularly section 17, also indicate that an amendment of pleadings can be permitted under Rule 15(a), Fed. R. Civ. P., after summary judgment has been allowed.

It is settled law in Oregon that a trial judge has wide discretion in determining whether to allow amendments to pleadings prior to and during trial. ORS 16.390; *Engelcke v. Stoehsler,* 273 Or 937, 544 P2d 582 (1975). His authority to do so after judgment is much more questionable. *See Scott*

Thunderbird did purport to appeal from the partial summary judgment and that that appeal was dismissed because of Thunderbird's failure to file a brief is not dispositive. The proceedings on Thunderbird's appeal from the partial summary judgment order were a nullity. We had no jurisdiction. The only appealable order in this case is the decree of dismissal and, in appealing from it, Thunderbird may now raise all issues which it preserved and which were decided adversely to it at any stage of the proceedings, including those which were determined by the partial summary judgment order.[2]

The defendants also argue that none of the plaintiffs have standing. Thunderbird alleged in its original complaint, upon which the partial summary judgment was rendered, that the legal effect of the challenged contract,

"* * * will likely be an economic detriment to the plaintiff as a taxpayer of the City of Portland. This legal effect will also likely be an economic detriment

_v. Ford,_ 52 Or 288, 97 P 99 (1908). Here the order permitting the amendment was made prior to the order granting partial summary judgment, but the partial summary judgment was rendered before the amended complaint was actually filed. Moreover, the judgment order was "partial" only because the issues which would be raised by the yet unfiled amended pleading were of course undecided. We conclude that the trial court acted within its authority by allowing the amendment and by deferring final judgment until the matters raised by the new pleading were resolved. No judgment was entered pursuant to the partial summary judgment order, nor was a final judgment entered until after the trial at which the matter in the amended complaint was considered. Hence, the events took place at a stage of the proceedings more akin to the trial or pre-trial phase than the post-judgment phase. In any event, defendants do not question the procedure which was followed.

[2] The question of whether the _other_ plaintiffs may raise on appeal the issues which were decided by the partial summary judgment order and which were stricken from the amended complaint through which they made their first appearance is a closer one, but it is rendered academic by our ruling concerning Thunderbird Motel. The relief plaintiffs seek in this case is that a contract be declared void and enjoined. It makes no practical difference whether we can afford that relief to more than one of the plaintiffs and, for the reasons noted, we do have jurisdiction to consider the appeal of and, therefore, the jurisdiction to afford the relief to Thunderbird.

to the plaintiff in plaintiff's operation of its motel and restaurant business because the subsidy will provide the new hotel with certain paid construction costs thereby reducing the debt it must service which will encourage greater profitability."

Defendants argue that

"neither the general interest of a taxpayer absent some special injury not showed by other taxpayers nor the alleged negative effect of increased competition is sufficient to confer standing."

■ It is not clear that the allegations in Thunderbird's original complaint give rise to *taxpayer* standing in light of *Gruber v. Lincoln Hospital District,* 285 Or 3, 588 P2d 1281 (1979). However, we hold that the alleged negative effect of *increased competition* is sufficient to confer standing. *See Ore. Newspaper Pub. v. Peterson,* 244 Or 116, 121, 415 P2d 21 (1966).

The question of whether the other plaintiffs have standing for any purpose and whether any of the plaintiffs have standing to raise the issues not decided by the partial summary judgment is closer. Although the amended complaint alleged standing on several bases, the only allegation of standing in the *second* amended complaint was that:

"Plaintiff Red Lion owns property and operates within the boundaries of the South Auditorium Urban Renewal Project and is entitled to rely upon the land use plan for this urban renewal area that does not permit the construction of a hotel on Block 115 * * *, nor construction of tennis courts to the east of Front Street."

■ At the outset, we note that the second amended complaint contains no allegation that any of the plaintiffs other than Red Lion has standing. Defendants argue that Red Lion's allegation is not sufficient to give it standing because Red Lion is located in Area I of the urban renewal project, while the hotel site is located in Area II of the project. Defendants analogize standing for present purposes to the decisions of the Supreme Court and this Court relating to standing in

land use cases. Whether or not defendant's analogy is good, it is not definitive. The interests of persons owning property or doing business in an urban renewal project go beyond the more generalized interest of property owners in land use actions. An urban renewal plan is a unified scheme, the value of which to any participant is at least arguably dependent upon uniform application to all participants and all the effected land. Under the circumstances, we are not prepared to hold that Red Lion does not have standing to raise the issues presented by the second amended complaint.

Because one or more of the plaintiffs have standing to raise all of the matters which are presented by their appeal, we turn to the merits.

Plaintiffs' principal arguments on appeal are, first, that the contract between the City and Moran violates Article XI, section 9 of the Oregon Constitution; second, that the price for which the City sold the hotel block to Moran, although it exceeded the site's appraised "fair reuse value," was less than the total of that value plus the value of the tennis courts and skybridge to be constructed by the City and was therefore less than the minimum price contemplated by ORS 457.230; and, third, that the construction of the hotel and the tennis courts as planned would be inconsistent with the land use plan for the South Auditorium Urban Renewal Project.

Article XI, section 9 of the Oregon Constitution provides in pertinent part:

"No county, city, town or other municipal corporation, by vote of its citizens, or otherwise, shall become a stockholder in any joint company, corporation or association, whatever, or raise money, for or loan its credit to, or in aid of, any such company, corporation or association. * * *."

Plaintiffs argue that Article XI, section 9, prohibits the City from constructing the skybridge and tennis courts, from agreeing to reach a subsequent agreement with Moran or its successors to manage those

facilities, from developing the waterfront area to complement the hotel and other facilities, and from selling the hotel site to Moran for a price less than its "fair reuse value." Defendants argue that the City's commitments and actions are consistent with Article XI, section 9, as construed by the Oregon Supreme Court in *Carruthers v. Port of Astoria,* 249 Or 329, 438 P2d 725 (1968), and *Miles v. City of Eugene,* 252 Or 528, 451 P2d 59 (1969). We agree with defendants.

In *Carruthers,* the Port of Astoria proposed to sell revenue bonds to finance the construction of an aluminum reduction plant, which was to be leased for a 25-year period to a private corporation and then sold to that corporation for a nominal balance. The ultimate recourse of the bond purchasers under the financing scheme in *Carruthers* was not against general tax revenues, but against the financed facilities, the income produced by those facilities, and the lessee of the facilities. In light of that fact, the Supreme Court noted that it was questionable whether the financing scheme involved *any* expenditure of public funds. The court nevertheless considered whether the expenditure of public monies—if such it was—served a "public purpose" and was therefore consistent with Article XI, section 9. The court stated:

> " 'The only valid criterion would seem to be whether the expenditures are sufficiently beneficial to the community as a whole to justify governmental involvement; but such a judgment is more appropriate for legislative than judicial action. The judiciary should invalidate expenditures only where reasonable men could not differ as to their lack of social utility.' Note, 66 Harv L Rev 898 at 903 (1953).
>
> "Looked at in the light of these sensible tests, rather than some of the obscure tests found in the cases, we find there is a public purpose served by the implementation of the proposal. The action of the Port is predicated upon its finding of a general benefit to the economy of the community. This is a public purpose." 249 Or at 341.

In *Miles,* the Supreme Court followed the rationale of *Carruthers* and suggested that Article XI, section 9, prohibits only those governmental expenditures through which a public body becomes a stockholder in a private corporation, or which encumber general tax revenues for the benefit of private persons, or which are not made for a public purpose. *Cf. Martin v. Oregon Building Authority,* 276 Or 135, 554 P2d 126 (1976).

■ Under the tests established in *Carruthers* and *Miles,* we conclude that there was no violation of Article XI, section 9 here. The contract between the City and Moran provides for the City's construction of public facilities and its development of a public waterfront area. It belabors the obvious to state that each of those undertakings is for a public purpose. A more colorable question is presented by the contractual provision that the City will negotiate with Moran or its successors for the latter to manage the skybridge and tennis courts. However, nothing before us at this time suggests that the private management of those facilities is inconsistent with their public use. Moreover, nothing in the record suggests that the construction of the skybridge and the tennis courts constitutes the financing of private facilities with tax dollars. So far as this record discloses, the parties to the contract intend for the ownership and use of the facilities to remain public.

■ Plaintiffs' contention that the amount of the purchase price for the hotel block violates Article XI, Section 9 is of course without merit if plaintiffs are not correct in their underlying contention that the purchase price was lower than ORS 457.230 permits. ORS 457.230(1) provides:

> "The urban renewal agency shall, in accordance with the approved urban renewal plan, make land in an urban renewal project available for use by private enterprise or public agencies. Such land shall be made available at a value determined by the urban renewal agency to be its fair reuse value, which

[706]

represents the value, whether expressed in terms of rental or capital price, at which the urban renewal agency in its discretion determines such land should be made available in order that it may be developed, redeveloped, cleared, conserved or rehabilitated for the purposes specified in such plan."

Plaintiff acknowledges that the fair reuse value of the hotel block, based on a restricted use as a convention hotel facility, was appraised at one dollar, and that the price Moran contracted to pay the City was $200,000. However, plaintiff argues that the value of the tennis courts and skybridge must be added for purposes of determining the fair reuse value under ORS 457.230(1). We do not read ORS 457.230 as meaning that the value of contemplated post-sale improvements must be included as a component of the sale price of land which is sold for the very purpose of being improved. We also do not understand the statute as requiring urban renewal agencies to add the cost of *public* improvements on *adjacent* land to the price for which land is sold to *private* developers. The fixing of the purchase price here did not constitute an abuse of the City's or Commission's discretion under ORS 457.230.

■    Plaintiffs next argue that the construction of the hotel and the tennis courts at the contemplated locations is inconsistent with the land use plan for the City's South Auditorium Urban Renewal Project. Specifically, plaintiffs contend that a hotel is not one of the enumerated permitted uses on the block which the City has sold Moran, and that the block on which the construction of the tennis courts is planned is required by the plan to be devoted to "public parks or landscaped open areas ***." The section of the plan governing the hotel site provides that, in addition to the enumerated uses, "other similar, related, and consistent uses" are also permitted. The enumerated uses include personal service establishments; restaurants and bars; fraternal organizations and clubs; theaters, arenas and meeting halls; retail stores; and

[707]

numerous others. The record discloses that, since 1968, the City and Commission planned for the block's use as a convention hotel site and have sought a buyer to put the block to such use. The City's and the Commission's determination that use of the block as a hotel site is related to or consistent with the uses enumerated in the plan is not clearly wrong, and we therefore defer to it.

Plaintiffs call our attention to no authority supporting their contention that tennis facilities are inconsistent with the use of land for park purposes. We decline to so hold.

In addition to those we have considered, plaintiffs raise a variety of arguments, some of which warrant brief attention. They argue that the trial court erred in granting partial summary judgment because there were material issues of fact, to-wit, whether the provision of the contract relating to the construction of the tennis courts and skybridge, the management of those facilities by Moran or its successors, and the development of the waterfront area, was intended by the parties to be severable from the remainder of the contract; and what the parties intended by the subsection of the contract pertaining to development of the waterfront area. The trial court concluded as a matter of law that the contractual provision which plaintiffs argue could have been found as a matter of fact to be severable from the remainder of the contract lent no more support to plaintiffs' claim for relief than did the balance of the instrument. Accordingly, the severability of that provision—if a question of fact—is not material.

The meaning of the provision of the contract relating to waterfront development also appears to us to be an immaterial question. Plaintiffs argue that, under one of the possible interpretations of the provision, the City could develop the area—and make expenditures therefor—in ways which aid the hotel and which are not now specified in the contract or elsewhere. Even if

this is true, however, the contract in its present form does not bind the City to do any such thing. The appropriate time for relief from any such action by the City is later, if at all.

■ Finally, plaintiffs argue that the trial court erred in receiving testimony by two witnesses, both consultants in urban planning matters, regarding the meaning of various provisions of the land use plan for the urban renewal project. Plaintiffs argue that the meaning of the plan was not an appropriate subject for expert testimony. It may be that the trial court, in arriving at its interpretation of the legal meaning of the plan and various terms in the plan, was entitled to hear testimony from qualified witnesses familiar with this specialized field. *See Southern Pacific v. Brown,* 207 Or 222, 295 P2d 861 (1956) and authorities cited therein. However, in view of the fact that the trial judge was correct as a matter of law in his interpretation of the plan, the admission of the testimony was harmless in any event.

In his opinion on the motion for summary judgment, the trial judge stated:

"* * * Clearly the Commission could not participate in the construction of the hotel. Surely the tennis courts, the sky bridge and other improvements in the vicinity of the property must in fact be public facilities - not part and parcel of defendants' hotel. Down the road when management and maintenance agreements relative to these improvements are drawn, any party with standing, including the plaintiff, will have the opportunity to enlist the aid of the court to assure that public funds are not misused and that public facilities are appropriately available for public use. * * *."

We hold, as did the trial court, that the contract is not invalid on its face and that no present state of facts in the record suggests that it is being or will be invalidly applied.

Affirmed.