Argued and submitted April 1, affirmed in part and reversed in part October 7, 1987

JANSEN et al,
*Respondents - Cross-Appellants,*
ARRIENS et al,
*Plaintiffs,*

*v.*

ATIYEH et al,
*Defendants,*
STATE BOARD OF HIGHER EDUCATION et al,
*Appellants - Cross-Respondents.*

(138,808; CA A38701)

743 P2d 765

David Schuman, Assistant Attorney General, argued the cause for appellants - cross-respondents. With him on the briefs were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Robert L. Ackerman, Springfield, argued the cause and filed the briefs for respondents - cross-appellants.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

DEITS, J.

## DEITS, J.

Plaintiffs, Ashland area motel and hotel operators, taxi drivers and caterers, sought declaratory and injunctive relief against defendant Oregon State Board of Higher Education (Board) acting by and through Southern Oregon State College (SOSC).[1] Plaintiffs' complaint alleged that defendant exceeded its authority in providing housing, food and transportation to groups[2] attending the Shakespearean Festival whose members are not fully matriculated students of SOSC. The Board contends that none of the disputed activities exceed its authority. The court held that at least some parties had standing to contest all of the issues and granted partial injunctive relief.[3]

The Board challenges the court's ruling concerning the services for non-SOSC students and out-of-state students at SOSC.[4] *See* n 9, *infra.* Plaintiffs cross-appeal, challenging

---

[1] The Board and its members are the only defendants who appeal. The court's judgments enjoined only the Board's activities.

[2] The groups consist of participants in the Elderhostel and Senior Venture programs, as well as other non-SOSC students. Elderhostel, Inc., is a Massachusetts nonprofit corporation that contracts with colleges nationwide to house persons over 60 years of age on campuses for a week or more. The Senior Ventures program was originated by SOSC and provides the same basic program as Elderhostel, except that the age requirement is 55 years or older and the length of the program is one and one half weeks. The programs include lodging, food and non-credit lectures. Extracurricular activities such as field trips may be offered.

[3] On the standing issue, the trial court ruled that: (1) the motel/hotel owners lack standing to challenge the Board's authority to house participants in the Elderhostel and Senior Venture programs but have standing to challenge the Board's authority concerning other groups; (2) the taxi drivers could challenge actions concerning members of the Elderhostel and Senior Venture programs but lack standing concerning the other groups; and (3) the caterers could challenge the providing of food services to persons housed at SOSC who are not fully matriculated students of SOSC. The Board does not challenge any of the standing rulings. *See* n 9, *infra.* The court ruled on the merits that: (1) the Board exceeded its authority in providing housing to non-students and to students of institutions located outside of Oregon who are housed at SOSC for the primary purpose of attending the Shakespearean Festival; (2) the housing of non-State Board of Higher Education students who attend educational institutions located within Oregon and who are attending the festival as an adjunct to a related credit or non-credit educational activity at their own institution is lawful; (3) the Board's providing catered food to groups not lawfully housed at SOSC is unlawful but, because the practice has been substantially curtailed and is unlikely to re-occur, relief is denied; and (4) provision of transportation to participants in the Elderhostel and Senior Venture programs is unlawful.

[4] The Board also appeals the court's award of costs, disbursements and attorney fees to plaintiff. On April 11, 1986, the court entered a supplemental judgment allowing those. On May 21, 1986, the Board filed a motion for relief from default, which we

the court's rulings concerning the Board's authority to furnish services to non-State Board of Higher Education students attending educational institutions located within Oregon and the hotel and motel operators' lack of standing to challenge the Board's housing of participants in the Elderhostel and Senior Venture programs at SOSC.

SOSC is located in Ashland, which hosts the annual Oregon Shakespearean Festival, a series of theatrical performances and related events extending from early spring until late fall. The festival is a nonprofit corporation unaffiliated with SOSC or the Board. In the early 1980's, SOSC administrators began implementing a plan to increase revenues by making their dormitory facilities available to groups of people meeting certain qualifications. In order to qualify to use SOSC facilities, a group must include more than 15 persons and must have an educational objective. In order to meet the educational requirement the group must be:

> "A gathering of a group of individuals with the purpose of learning new skills, sharing insights or exploring specific problems relating to a defined subject, issue, discipline, or profession * * *." SOSC's *Conference and Special Events Guidelines.*

SOSC does not necessarily offer the groups either on- or off-campus organized instruction. The educational objective of the groups typically consists of exposure to or discussion of the plays presented by the Shakespearean Festival.

When SOSC decided to offer its facilities for use by the groups, it became necessary to renovate some of the resident halls. Most of the costs of renovation were raised through issuance of Article XI-F(1) bonds. Plaintiffs argue that the use of facilities constructed or renovated with the bonds is inconsistent with the provisions of Article XI-F(1) of the Oregon Constitution and the requirements of ORS 351.160(1).

■ Article XI-F(1) authorizes the issuance of revenue bonds "to finance the cost of buildings and other projects for

---

denied on July 28, 1986. Because the Board's motion was filed more than 30 days after entry of the supplemental judgment, and we are without authority to extend the time set by statute within which to file an appeal, ORS 19.026(1); ORS 20.220, we are precluded from considering the issue, and to that extent the judgment must be affirmed. *Jansen v. Atiyeh,* 302 Or 314, 728 P2d 1382 (1986).

higher education, and to construct, improve, repair, equip, and furnish buildings and other structures for such purpose, and to purchase or improve sites therefor."[5] ORS 351.160(1), which was enacted to carry out the provisions of Article XI-F(1), provides:

"The board of higher education may undertake the construction of any building or structure for higher education when, in the judgment of the board, it appears that the building or structure will be wholly self-liquidating and self-supporting from revenues to accrue from the operation thereof and from gifts, grants or building fees, and from unobligated revenues of buildings or projects of like character. The board may enter into contracts for the erection, improvement, repair, equipping and furnishing of buildings and structures for dormitories, housing, boarding, offstreet motor vehicle parking facilities and other *purposes for higher education* pursuant to Article XI-F (1) of the Oregon Constitution, ORS 351.160 to 351.190, 351.350 to 351.460, 351.480 and 351.490." (Emphasis supplied.)

---

[5] Article XI-F(1) provides:

"Section 1. The credit of the state may be loaned and indebtedness incurred in an amount which shall not exceed at any one time three-fourths of one percent of the true cash value of all the taxable property in the state, as determined by law to provide funds with which to redeem and refund outstanding revenue bonds issued *to finance the cost of buildings and other projects for higher education, and to construct, improve, repair, equip, and furnish buildings and other structures for such purpose,* and to purchase or improve sites therefor.

"Section 2. The buildings and structures hereafter constructed for higher education pursuant to this amendment shall be such only as conservatively shall appear to the constructing authority to be wholly self-liquidating and self-supporting from revenues, gifts, grants, or building fees. All unpledged net revenues of buildings and other projects may be pooled with the net revenues of new buildings or projects in order to render the new buildings or projects self-liquidating and self-supporting.

"Section 3. Ad valorem taxes shall be levied annually upon all the taxable property in the state of Oregon in sufficient amount, with the aforesaid revenues, gifts, grants, or building fees, to provide for the payment of such indebtedness and the interest thereon. The legislative assembly may provide other revenues to supplement or replace such tax levies.

"Section 4. Bonds issued pursuant to this article shall be the direct general obligations of the state, and be in such form, run for such periods of time, and bear such rates of interest, as shall be provided by statute. Such bonds may be refunded with bonds of like obligation. Unless provided by statute, no bonds shall be issued pursuant to this article for the construction of buildings or other structures for higher education until after all of the aforesaid outstanding revenue bonds shall have been redeemed or refunded.

"Section 5. The legislative assembly shall enact legislation to carry out the provisions hereof. This article shall supersede all conflicting constitutional provisions." (Emphasis supplied.)

Plaintiffs argue that SOSC's use of its facilities for non-SOSC students does not satisfy the requirement that the facilities be used for purposes of "higher education."

Plaintiffs are correct that buildings constructed or improved with proceeds of Article XI-F(1) bonds must be used *for* purposes of "higher education."[6] Thus, the crucial issue in this case is whether SOSC's policy of allowing the groups to use the facilities is within the definition of "higher education."[7]

The terms are not defined in the statutes, nor are they exact terms, *see Springfield Education Assn. v. School Dist.,* 290 Or 217, 223, 621 P2d 547 (1980), because they do not communicate a precise meaning. Whether the term is interpretive or delegative depends upon whether it embodies "complete expressions of legislative meaning," 290 Or at 224, or expresses "noncompleted legislation that the agency is given delegated authority to complete." 290 Or at 228. In view of the broad general authority that the legislature has given to the Board to manage the higher education system of the state, we conclude that the term is delegative and that the Board has the authority to define the terms "higher education." The legislature has granted the Board the authority to "[s]upervise the general course of instruction * * * and the research, extension, educational and other activities" of each institution under its control. ORS 351.070(2)(a). It may "[m]aintain cultural and physical development services" of its institutions. ORS 351.070(2)(c). It may appoint and employ presidents, teachers and employes of its entities, ORS 351.070(1)(a), set fees for enrollment, ORS 351.070(1)(c), confer degrees, ORS 351.070(1)(f), and prescribe qualifications for admission into its institutions. ORS 351.070(1)(g). In addition, the Board may adopt regulations and polices relating to certain matters

---

[6] We do not address the question of whether, because the funds would be available to the Board to be used for educational purposes, allowing groups or individuals who do not have an educational purpose to use SOSC facilities for a fee would meet the requirement that the facilities be used "for higher education."

[7] The Board also argues that, once buildings have been constructed or improved with Article XI-F(1) bond proceeds with the intention that they be used for educational purposes, the constraints of Article XI-F(1) have been satisfied and any subsequent or incidental use is within the scope of Article XI-F(1). We need not address that contention, because we conclude that housing non-SOSC students with an approved educational objective in SOSC facilities furthers "higher education."

without complying with the rulemaking provisions of the Administrative Procedure Act. ORS 351.072(1)(a).

▪  The Board also has been delegated broad authority over the management of property. ORS 351.060 provides:

"The State Board of Higher Education may:

"(1)  Control and provide for * * * the custody and occupation of the * * * buildings * * * belonging to each and all the institutions, departments or activities under the control of the [board].

"(2)  Manage, control and apply all property of whatever nature given to or appropriated for the use, support or benefit of any or all of the institutions, departments or activities under the control of the [board].

"(3)  Erect, improve, repair, maintain, equip and furnish buildings, structures and lands for higher education.

"(4)  [C]ontrol, * * * manage, operate, lease, lend, invest, improve and develop any and all property, real or personal:

"* * * * *

"(b)  * * * for the benefit of any of the institutions, departments or activities under the control of the board * * *."

We conclude that the legislature has delegated to the Board the authority to interpret the term "higher education."[8] We also conclude that the Board's interpretation in this instance was within its discretion and is not inconsistent with the constitutional or statutory provisions. As noted above, the statutory scheme relating to higher education contemplates that the system may offer more than traditional formal degree programs. The Board may maintain "cultural development services," ORS 351.070(2)(c), as well as offer "extension" activities, ORS 351.070(2)(a), in its instructions. SOSC has decided that only groups having an educational mission may use its facilities. That use is within those contemplated by the legislative scheme.[9]

---

[8] The Board's subdelegation to SOSC is lawful. ORS 183.325; ORS 351.072.

[9] The parties agree that there was no reason for the court's distinction between non-Board students who attend educational institutions within Oregon and non-students and out-of-state students to whom the Board does not provide organized higher or continuing education instruction. We agree and affirm on plaintiff's cross-appeal pertaining to the Board's housing of non- and out-of-state students. The remaining issue raised on cross-appeal by plaintiffs concerns the court's ruling that plaintiffs do not have standing to challenge the housing of Elderhostel and Senior Venture groups. Whether or not those plaintiffs have standing, the other plaintiffs do. *Thunderbird Motel v. City of Portland,* 40 Or App 697, 596 P2d 994, *rev den* 287 Or 409 (1979).

Plaintiff's remaining argument is that SOSC's policy is required to be, and was not, adopted through formal rulemaking procedures and, thus, is void. The Board contends that SOSC's policy is exempt from APA rulemaking procedures. ORS 351.072(1). We agree. That section provides:

"Notwithstanding ORS 183.310 to 183.550, the following actions may be taken by the State Board of Higher Education or the educational institutions under its control without compliance with the rulemaking provisions of ORS 183.310 to 183.550:

"(a) Adoption of standards, regulations, policies or practices by any of the educational institutions under the control of the State Board of Higher Education relating primarily to admissions, academic advancement, classroom grading policy, the granting of academic credits, granting of degrees, scholarships and similar academic matters.

"(b) Adoption of fees or fee schedules by the State Board of Higher Education or any of the educational institutions under its control, relating to charges for symposiums, conferences, short courses, food, books or other retail goods, prices of admission to athletic, entertainment or cultural events or advertising rates in student or institutional publications. However, student loan service charges, charges levied as penalties for prohibited conduct, general tuition, building fees, incidental fees, health service fees and residence hall and housing charges shall be adopted in accordance with the provisions of ORS 183.310 to 183.550."

SOSC's policy is the standard by which its officials determine whether prospective groups have a sufficient educational purpose to qualify for the use of SOSC facilities. That determination is a "similar academic matter" to those explicitly expressed in subsection (a) and is, therefore, exempt from APA rulemaking procedures.

On appeal, affirmed as to award of costs, disbursements and attorney fees, and reversed as to determination that Board exceeded its authority in providing services to non-students and to students of institutions located outside Oregon; on cross-appeal, affirmed.