Argued October 13, 1972, reversed with directions
March 1, 1973

HURD ET UX, *Respondents, v.* BYRNES, *Appellant.*

506 P2d 686

*H. F. Smith,* Klamath Falls, argued the cause and filed briefs for appellant.

*Robert S. Hamilton,* Klamath Falls, argued the cause for respondents. With him on the brief were Beddoe & Hamilton, Klamath Falls.

O'CONNELL, C. J.

This is a suit to enjoin defendant from trespassing upon a parcel of land to which plaintiffs claim title. Plaintiffs also pray for damages as a result of the alleged trespass. The trial court entered a decree in favor of plaintiffs, restraining defendant from entering upon the property and awarding plaintiffs damages in the amount of $1,500. Defendant appeals.

The property in question is a 25-foot wide strip of land running from plaintiffs' land through property owned by defendant, and thence through property owned by Schubert and finally to The Dalles-California Highway, now known as Highway No. 97. The

relative locations of these properties may be better visualized with the help of the following diagram:

Until March 16, 1940, T. B. Watters held title to all the lands now owned by plaintiffs, defendant, and Schubert. On that date Watters conveyed by warranty deed the property now owned by defendant and Schubert to Leonard Hamilton. The deed described the property and then included the following language:

"RESERVING AND EXCEPTING From said property a parcel of land 25 feet in width, being 12½ feet on each side the following-described center line: [Description omitted]

"Grantors propose to construct an irrigation and drainage ditch on said property reserved, and in this connection grantors further reserve unto themselves, their heirs, administrators and assigns, the perpetual right of ingress and egress across the

lands herein conveyed for the purpose of constructing, operating and maintaining said irrigation and drainage ditch. Grantee, his heirs, administrators and assigns, are hereby granted the perpetual right and easement to jointly use said irrigation and drainage ditch for the irrigation and drainage of the lands herein conveyed."

Later that year Watters conveyed a strip along the western side of his land and Hamilton's land to the State Highway Commission. Hamilton conveyed the property purchased from Watters to Bertrand W. Hamilton, and on March 19, 1959 the latter conveyed this property by warranty deed to defendant. On January 3, 1961 Watters sold to plaintiffs his property lying south of and adjacent to the defendant's land, along with a three-acre triangular tract lying to the east of and adjacent to defendant's land. In 1963 Schubert purchased the northern portion of defendant's property. All of the deeds which pertain to the property now owned by defendant make reference to the above quoted clause of the deed executed by Watters to Leonard Hamilton. The resolution of the present controversy turns upon the construction of that clause.

The trial court construed the clause as withholding title in the disputed strip from the grantee (Leonard Hamilton), and that plaintiffs therefore hold title to it by virtue of the 1961 conveyance to them from the grantor (Watters). This construction comports with plaintiffs contention that the clause following the description of the strip and explaining its proposed use is not a limitation on the grantor's interest in the strip but merely an explanation of grantor's reason for reserving title to it. Plaintiffs maintain that the use of the term "excepting" in the first part of the clause and not in the second lends additional support

to this construction, relying upon cases which regard an "exception" as expressing an intent to retain title, as distinguished from a "reservation" which operates to create in the grantor a new right not previously existing.[1]

Defendant, on the other hand, contends that the quoted provision, when read in light of the circumstances attending the conveyance, evinces the grantor's intent to convey a fee in the strip, subject only to a non-exclusive easement reserved to the grantor for the purpose of constructing an irrigation and drainage ditch.

■■ We do not attach any significance to the use of the terms "exception" and "reservation." It is a matter of common knowledge that in practice these terms are used indiscriminately, and that frequently what is designated an exception is in substance a reservation, and vice versa.[2] Indeed, in the clause before us the two terms are used together as if they meant the same thing. Whether a provision operates to retain title in the grantor or merely to create a lesser interest in him must be determined from the language of the entire instrument,[3] the situation of the property, and

---

[1] "The office of an exception is to take something out of the thing granted that would otherwise pass by the deed. It is a part of the thing which is included in the general terms of the grant but because of a provision made in the deed is excluded from the grant and remains in the grantor by virtue of his original title, while a reservation creates a new right in the thing granted which was not in existence at the time of the making of the grant and was originated by it." Rall et ux v. Purcell et ux, 131 Or 19 at 21, 281 P 832 (1929).

[2] Rall et ux v. Purcell, *supra* 131 Or at 22. See generally 16 Am Jur 615, Deeds § 310 (1938); 139 ALR 1341, 1349 (1942); 6 Thompson on Real Property § 3090 (1962).

[3] See, e.g., Palmateer et al v. Reid, 121 Or 179, 183, 254 P 359 (1927).

the circumstances indicating the purpose for which the land is conveyed.[4]

The language in the clause before us does not reveal the intention of the parties to the 1940 deed with respect to the nature of the grantor's interest in the strip. It will be noted that the grantor describes the proposed use to which the strip is to be put. It has been suggested that the recitation of a proposed use as distinguished from present use is indicative of an intent to convey an easement only. Thus one commentator states, "it would seem that a statement as to the present use of the land might very likely be incorporated in the deed merely for the purpose of identifying the land excepted from the conveyance, whereas it seems rather improbable that a grantor would state in the deed the intended future use of the land covered by the exception clause merely for the purpose of identifying it."[5] Although there might be circumstances in which the suggested distinction could be made, we do not think that the deed in the present case would be construed any differently if the clause in question described a present use. And we find nothing else in the language of the deed which indicates one way or the other the nature of the interest the grantor intended to reserve.

Defendant argues that the intention to create an

---

[4] See Cappelli v. Justice, 262 Or 120, 496 P2d 209 (1972); Tusi v. Jacobsen, 134 Or 505, 293 P 587, 939, 71 ALR 1364 (1930); Abraham v. Abbott, 8 Or 53 (1879); 3 American Law of Property § 12.91 (Casner ed 1952); ORS 41.740.

[5] Annotation: Statement as to use being made or intended to be made of lands excepted or reserved from conveyance as limiting effect of exception or reservation, 139 ALR 1339, 1350 (1942). See also, Coon v. Sonoma Magnesite Co., 182 Cal 597, 189 P 271 (1920); Zimmerman v. Kirchner, 151 Iowa 483, 131 NW 756 (1911); Greenwalt v. McCardell, 178 Md 132, 12 A2d 522 (1940).

easement rather than a fee simple interest can be derived from the circumstances attending Watters' conveyance to defendant's predecessor in title. But there is scant evidence in the record of the circumstances existing at the time of Watters' conveyance. There are facts from which it could be inferred that at the time of the conveyance Watters was faced with the problem of how he would get water from Upper Klamath Lake to his land after Highway No. 97 was constructed. The reservation of an interest in the 25-foot strip was thus apparently intended to provide a route for the irrigation ditch which the "grantors propose to construct." But the route selected by Watters was not the only method of leading the water to his land. After execution of the deed in question, highway openings were provided at five other points which made it possible to lead the water on to Watters' land south of defendant's land, making it unnecessary to use the reserved strip. Eventually portions of the reserved strip were filled by defendant's predecessors in interest and at one point a service station was constructed on the fill.

These uses continued over a period of time during which defendant asserts Watters made no complaint. Defendant does not spell out the legal significance of Watters' failure to complain, but we assume the argument to be that such nonaction constitutes a practical construction of the clause in question by the grantor, indicating his recognition that his interest consisted of an easement only and that with the cessation of any need for the route marked out by the strip the grantor regarded his interest in the strip at an end.

██ The record simply does not provide sufficient evidence of Watters' conduct to support the inferences

defendant attempts to draw. We think, however, that the solution can be found in other considerations. Where narrow strips of land have been the subject of dispute in construing various conveyances, we have held that there should be a constructional preference in favor of the grantee. We have pointed to a number of considerations which warrant this preference. We have taken the view that where the conveyance or reservation of title to narrow strips of land is in question, the probable intent of the grantor is not to retain title if he does not own abutting land. Our previous cases recognizing this principle have involved conveyances bordering on a street or stream. We have assumed that in the absence of an express provision to the contrary the grantor, in conveying land described as bordering a street or stream, ordinarily intends to also convey his title to the street portion of the lot or to the bed of the stream. This rule of construction is also founded on policy considerations, including the prevention of vexatious litigation and the prevention of the existence of strips of land the title to which would otherwise remain in abeyance for long periods of time.[6] Supporting this conclusion is the general rule that ambiguities in a deed are to be construed against the grantor.[7]

■ It is our opinion that the rule of construction applied in our previous cases where the strip was not described (strips bordering a street or stream) should be applied in the present case, although we recognize

---

[6] See Fahey v. City of Bend, 252 Or 267, 449 P2d 438 (1969); McAdam et ux v. Smith et al, 221 Or 48, 350 P2d 689 (1960); Cross v. Talbot et al, 121 Or 270, 254 P 827 (1927). See also, 4 Tiffany, Real Property 106, § 996 (1939); 3 American Law of Property 428-9, § 12.112 (Casner ed 1952).

[7] See, e.g., Palmateer v. Reid, supra; 3 American Law of Property § 12.94 (Casner ed 1952).

that not all of the reasons advanced in the cases involving an undescribed strip are applicable where, as here, the strip and its use is described. We think that in the absence of an express provision withholding in the grantor title to the strip described or circumstances clearly indicating an intent to withhold title, it is fair to assume that a statement in the deed of a present or proposed use ordinarily indicates an intention to reserve only an easement in the strip.

The decree of the trial court is reversed with directions to enter a decree confirming title in defendant to the strip in dispute, subject to the easement reserved to the grantor and now vested in plaintiffs.

McALLISTER, J., concurs in the result.