Argued and submitted September 6, affirmed as modified November 14, 1985,
reconsideration denied January 17, petition for review allowed March 11, 1986
(300 Or 605)
See later issue Oregon Reports

RENDLER et al,
*Appellants,*

*v.*

LINCOLN COUNTY et al,
*Respondents,*

*and*

The COMMITTEE TO SAVE YACHATS 804 TRAIL, INC.
*Intervenor-Respondent.*

(41260; CA A32003)

709 P2d 721

Harold D. Gillis, P.C., Eugene, argued the cause and filed the brief for appellants.

Nancy Craven, Lincoln County Legal Counsel, Newport, and Robert W. Connell, Deputy Lincoln County Legal Counsel, Newport, filed the brief for respondents.

Richard P. Benner, Portland, argued the cause and filed the brief for intervenor-respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is an action to vacate a county road. Appellants appeal from a trial court judgment holding that Lincoln County Road 804 (804) was properly established and never vacated or abandoned, and that the public has acquired a prescriptive easement over appellants' land abutting 804. The issues are (1) whether the Committee to Save Yachats 804 Trail, Inc. (intervenor) had standing to intervene and seek declaratory relief, (2) whether 804 was vacated or abandoned and (3) whether the public has acquired a prescriptive easement over appellants' land. We affirm.

In 1890, when the area in question was still part of Benton County, the County Court began proceedings to establish a road from Waldport to Yachats. Road viewers laid out the road and filed a road viewers report. A survey was made. Benton County issued the following order:

> "It is ordered, that said report, survey and plat of said road be recorded, and that said road be and is hereby declared to be a public highway, and that an order issue to open said road."

That is the only order recording the opening of 804. A resurvey of the area in 1893 records the road as existing. Although it did not exactly follow the 1890 survey, it generally followed the original road viewers route. In 1916, the Lincoln County Court established another road from Waldport to Yachats, County Road 802 (802), following a similar but straighter route. In 1932-33, the Roosevelt Coast Highway (Highway 101) was established along the same route as 802.

Appellants own adjoining parcels along the north portion of the bluff over which 804 passes. The road first appeared on the tax assessor's map in 1962; before that time property owners were assessed taxes for the portions of 804 running over their land. Intervenor was incorporated in 1977 for the sole purpose of protecting the 804 right-of-way. Its members own property near 804. They use 804 for hiking, beach access, fishing, hauling firewood and other recreational activities.

In April, 1979, appellants sued to have 804 declared vacated and to have 804 removed from the tax assessor's map. In June, 1979, the then Lincoln County Commissioners

entered into a stipulation "that a decree may be entered herein declaring that County Road No. 804 has been vacated and abandoned by LINCOLN COUNTY, Oregon as a result of the establishment of County Road 802 and the failure to improve, develop and use said County Road No. 804 * * *."[1] That stipulation was later withdrawn by the *present* Lincoln County Commissioners, who now contend that 804 was *not* vacated. Intervenor filed an answer and motion to intervene requesting a judgment declaring that 804 was not vacated or abandoned and that the public had acquired a prescriptive easement over appellants' land abutting 804.

The trial court found that intervenor had standing and allowed intervention. After trial, the court found that the road was established as laid out in 1890, and that it was not vacated or abandoned. The court further found that some of the roadway had been lost due to erosion along the bluff, and that the public had acquired an easement across appellants' property from the bluff line ranging in an easterly direction from 25 feet to 75 feet at various points.

■  Appellants first contend that the trial court erred in finding that 804 was legally established and opened in 1890 and that, in the area subject to these proceedings, it was never vacated or abandoned.[2] Their argument involves two issues. In 1890, Oregon law provided:

> "If any part of any road in this State shall not be opened for four years after or from the time of its location, the same shall become vacated." Hill's Annotated Laws of Oregon 1892, § 4101.

---

[1] The trial judge stated:

"The Stipulation was for a decree which, in effect, would have vacated or had the effect of vacating on the record the County—what at one time at least was alleged to be a County road, and I do not feel that it could be a County road. It could be vacated if there was a County road. It could not be vacated by such a procedure; therefore, it would not be considered and is not considered a viable Stipulation on which a decree would be based. For those reasons, I will allow us to proceed with the trial."

[2] Appellants contend that intervenor does not have standing to intervene or to seek a declaration that 804 was never vacated. However, because Lincoln County is a party with standing, we need not address the standing question on the issue of road vacation. *See Perkins v. City of Rajneeshpurham,* 68 Or App 726, 728, 686 P2d 369 (1984), *aff'd as modified* 300 Or 1, 706 P2d 949 (1985); *Bryant v. Clackamas County,* 56 Or App 442, 445, 643 P2d 649 (1982); *Thunderbird Motel v. City of Portland,* 40 Or App 697, 704, 596 P2d 944, *rev den* 287 Or 409 (1979).

In *Hislop v. County of Lincoln,* 249 Or 259, 437 P2d 847 (1968), the Supreme Court held that the statute was self-executing and that an unopened road ceased to exist by operation of law four years after location. Appellants contend that 804 was never opened. The statute required, in relevant part:

> "[T]he court shall cause said [viewers'] report, survey, and plat to be recorded, and from thenceforth said road shall be considered a public highway, and the court shall issue an order directing said road to be opened." Hill's Annotated Laws of Oregon 1892, § 4065.

In 1890, the Benton County Court issued an order directing that the viewers' report, survey and plat be recorded, that 804 be considered a public highway and that "an order issue to open said road." Appellants contend that that language required a second order to be issued before 804 was opened, that no second order was issued and, therefore, 804 was never opened. We do not read the language so narrowly. The order, as a whole, merely follows the language of the statute. The order itself established and opened 804; no further order was necessary.

■     Appellants next contend that the trial court erred in finding that 804 was neither vacated nor abandoned by the establishment of 802 and Highway 101. At the time these proceedings were begun, Oregon law provided, in relevant part:

> "When a county road has been once established, and * * * has not been used for vehicular traffic by the public for a period of 16 years, then upon petition of six freeholders of the road district in which the road is located, praying for vacation of the road * * * or unused portion thereof, the *county court* shall conduct an investigation and * * * make an order declaring the road * * * or unused portion thereof vacated * * *." *Former* ORS 368.620 (repealed by Or Laws 1981, ch 153, § 79).[3] (Emphasis supplied.)

Appellants filed this action in circuit court. The circuit court had no jurisdiction to vacate an opened road. *See Martin v.*

---

[3] The new sections dealing with vacation of county roads appear at ORS 368.326 *et seq.*

*Klamath County,* 39 Or App 455, 460, 592 P2d 1037, *rev den* 287 Or 45 (1979).[4] We find no error.

Appellants next contend that the trial court erred in finding that the public acquired an easement by prescription over appellants' property abutting 804. They argue first that intervenor has no standing because it has not suffered, and will not suffer, any direct injury, that this court has approved representational standing only in land-use cases and that the Supreme Court has not examined or approved the concept of representational standing. *See Benton County v. Friends of Benton County,* 294 Or 79, 81, 653 P2d 1249 (1982). Intervenor relies on *1000 Friends of Oregon v. Multnomah Co.,* 39 Or App 917, 593 P2d 1171 (1979). We now hold that representational standing is not limited to land use cases and that intervenor has standing.[5]

To qualify for representational standing, an organization must show that:

" '(a) its members would other-wise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted, nor the relief requested, requires the participation of individual members in the lawsuit.' *Hunt v. Washington Apple Advertising Comm'n,* 432 US 333, 343, 97 S Ct 2434, 53 L Ed 2d 383 (1977)." *1000 Friends of Oregon v. Multnomah Co., supra,* 39 Or App at 923.

*See also Warth v. Seldin,* 422 US 490, 511, 95 S Ct 2197, 45 L Ed 2d 343 (1975). The standing of the members as individuals depends on the statutes on which they base their claim. *Benton County v. Friends of Benton County, supra,* 294 Or at 82. Intervenor relies on the intervention statute, ORS 13.130,[6]

---

[4] In 1974, owners of land abutting 804 petitioned the Lincoln County Commissioners to have the road vacated. Portions of the land involved in that petition are involved here. The Commissioners denied vacation.

[5] The federal cases from which the concept arose were not land-use cases. *See Hunt v. Washington Apple Advertising Comm'n, supra.*

[6] *Former* ORS 13.130 provided, in pertinent part:

"At any time before trial any person who has an interest in the matter in litigation may, by leave of court, intervene. Intervention takes place when a third person is permitted to become a party to a suit, action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and defendant * * *." *Former* ORS 13.130 (*repealed by* Or Laws 1979, ch 284, § 199).

Intervention is now governed by ORCP 33.

and the declaratory judgment statute. ORS 28.020.[7]

■     Intervention is permissible when a person has an interest in the litigation. That means:

> "the right or interest which will authorize a third person to intervene must be of such direct and immediate character that the intervener (sic) will either gain or lose by the direct legal operation of the judgment: *Smith v. Gale,* 144 U.S. 509 (12 S. Ct. 674, 36 L. Ed. 521) * * *." *Brune v. McDonald,* 158 Or 364, 370, 75 P2d 10 (1938).

Members of intervenor would suffer direct and immediate harm if the court determined that no easement exists. Much of 804 has eroded, causing members of intervenor to use areas of appellants' land abutting 804 as a right-of-way. If it were determined that there is no easement, members of intervenor would no longer be able to use the area.

■     Appellants contend that members of intervenor would not have standing to seek a declaratory judgment, because they cannot allege an injury to their own right or interest; they merely claim an injury belonging to the public in general. *See Gruber v. Lincoln Hospital District,* 285 Or 3, 7, 588 P2d 1281 (1979); *Eacret et ux v. Holmes,* 215 Or 121, 124-25, 333 P2d 741 (1958). Associations whose members use particular natural resource areas have standing to sue to protect their interests in those areas. *See Sierra Club v. Morton,* 405 US 727, 92 S Ct 1361, L Ed 2d 636 (1972).[8]

■     Intervenor's counterclaim and motion to intervene state that intervenor's members frequently use 804 and the "right-of-way" abutting 804 and that many of its members own property in close proximity and within sight and sound of 804. The motion to intervene also states:

---

[7] ORS 28.020 provides:

"Any person interested under a deed, will, written contract or other writing constituting a contract, or whose rights, status or other legal relations are affected by a constitution, statute, municipal charter, ordinance, contract or franchise may have determined any question of construction or validity arising under any such instrument, constitution, statute, municipal charter, ordinance, contract or franchise and obtain a declaration of rights, status or other legal relations thereunder."

[8] That case dealt with standing under section 10 of the Administrative Procedure Act, 5 USC § 701 *et seq.* The argument, however, is the same: claimants had no standing because the only injury was to an interest shared by the general public.

"Plaintiffs by these proceedings would propose to change the character and use of land upon which County Road 804 is situated, including its scenic and recreational value, to the detriment of members of the Committee to Save Yachats 804 Trail and the public in general * * *."

Although *Sierra Club* is not binding on us because it was decided as a matter of federal law, we nonetheless find its reasoning persuasive. We conclude that intervenor has alleged a sufficient interest to have standing.

In *Bostwick v. Hosier*, 97 Or 125, 190 P 299 (1920), the defendant owned property abutting a road which he sought to have vacated. The plaintiffs, owners of nonabutting nearby property, sought to enjoin the vacation. The court held that nonabutting property owners who own property in the next adjacent blocks are in a situation that differs only in degree from that of an abutter. The court found that access to the plaintiffs' property would be partially impaired by the vacation and, thus, the injury to them was not the same as the injury suffered by the general public.

Here, intervenor's members do not own property abutting 804. However, if no easement exists in areas where 804 has eroded away, access to intervenor's members' property from the beach and the bluff will be partially impaired; they would have to go some distance north or south to get to their property. We conclude that intervenor has alleged sufficient injury to its members' interests.

■     Appellants next contend that intervenor cannot raise the easement issue, because it cannot raise new matters on intervention. *Brune v. McDonald, supra,* 158 Or at 371. We conclude that the easement issue is not entirely new matter. The issue here is whether the public has a right-of-way. The location of that right of way is part of that issue, because portions of 804 no longer exist. Cases cited by appellants involve issues that are entirely outside the scope of the pleadings and would not have been affected by resolution of those cases on the matters pled.[9] Additionally, appellants

---

[9] In *Brune v. McDonald, supra,* an insurer attempted to intervene in a personal injury case, claiming that the insurer would not be liable, because the insured had breached its contract with the insurer. The court held that that was entirely new matter, required proof of new facts and had no bearing on whether the defendant insured was liable to the plaintiff. In *Union High School Dist. No. 2 v. La Clair et ux,*

sought a declaration that 804 had been vacated. Resolution of the vacation issue would not "terminate the uncertainty or controversy giving rise to the proceeding", ORS 28.060; the easement issue would still remain. Intervenor's members would have had standing to sue, in their own right, to intervene and seek a declaratory judgment. Therefore, it was permissible to allow intervention in order to resolve the entire controversy.

■ Intervenor also meets the other requirements for representational standing. The nature of the claim and the declaratory relief requested do not require individualized proof and, therefore, do not require participation of individual members in the suit. The interests intervenor seeks to protect are clearly germane to intervenor's purpose: it was incorporated solely to "legally establish the prescriptive easement rights of the public to a pedestrian right of way" abutting 804. We conclude that intervenor qualifies for representational standing.

Appellants also contend that the trial court erred in finding that intervenor's members' use of appellant's property alongside 804 was adverse and under claim of right.[10] They argue that, because the area was unenclosed and unimproved, the use is presumed to have been permissive and that intervenor has not overcome that presumption.

■ Generally, when land has been used openly, continuously and uninterruptedly for the statutory period, a presumption arises that the use was adverse. The burden is on the owner to prove that the use was not adverse. *Feldman et ux v. Knapp et ux,* 196 Or 453, 472-73, 250 P2d 92 (1952). That presumption does not apply, however, when the land involved is unenclosed or unimproved; in that case the use is presumed to be permissive, and the burden is on the claimant to prove that the use was adverse. *Wood v. Woodcock,* 276 Or 49, 56, 554

---

218 Or 493, 497, 344 P2d 769 (1959), the court held that a taxpayer could not intervene in a quiet title suit between a school district and a former school official and claim that the school district had paid too much for the property. Again, an entirely new issue was raised, requiring proof of entirely new facts, and which would not be affected by a judgment in the case based on the issues raised by the pleadings.

[10] To establish an easement by prescription requires proof that the area was used openly and notoriously and that the use was continuous, adverse and under claim of right. *Thompson v. Scott,* 270 Or 542, 546, 528 P2d 509 (1974).

P2d 151 (1976); *see* 3 Powell, *The Law of Real Property,* ¶413 at 34-113 *et seq* (1984); *Annot.,* 170 ALR 776, 820-823. The property involved here is near fenced areas, intervenor's members were confronted by property owners who claimed that the members were trespassing and the property is not far from improvements on appellants' land. This is not the kind of situation to which the presumption of permission applies. Rather, the use is presumed to be adverse. Appellants have not overcome that presumption.

Finally, appellants contend that the use was not under claim of right, because the claimed right belongs to the county. That argument lacks merit. The use was based on a belief that the public had a right-of-way. The right to use 804 belongs to the public, including intervenor's members. Their belief that the roadway included the area over which they travelled is sufficient to establish a claim of right.

We conclude that intervenors have shown open and continuous adverse use under a claim of right for the statutory period. The finding of an easement by prescription was proper.

■ Although we affirm the finding of an easement, the location of the easement, as set out in the decree, includes portions of 804. Therefore, we modify the decree to exclude those portions of the easement that encompass any portion of County Road 804.

Decree modified to exclude portions of easement that encompass portions of County Road 804; affirmed as modified.