Argued and submitted February 9, reversed and remanded April 22, 1987

# NORTHWEST ALLIANCE FOR MARKET EQUALITY,
## *Appellant,*

### *v.*

# TRI-COUNTY METROPOLITAN TRANSPORTATION DISTRICT OF OREGON et al,
## *Respondents.*

### (A8603-01506; CA A40353)

735 P2d 1236

Michael J. Morris, Portland, argued the cause for appellant. With him on the briefs was Grebe, Gross, Peek, Osborne & Dagle, P.C., Portland.

Christopher P. Thomas, Portland, argued the cause and filed the brief for respondent Tri-County Metropolitan Transportation District of Oregon.

G. Kenneth Shiroishi, Portland, argued the cause for respondent Young Men's Christian Association of Columbia-Willamette. With him on the brief were Douglas V. Van Dyk and Dunn, Carney, Allen, Higgins & Tongue, Portland.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiff, an "association of private health clubs and racquet clubs," brought this declaratory judgment action against defendants Tri-County Metropolitan Transportation District (Tri-Met) and Young Men's Christian Association of Columbia-Willamette (YMCA), challenging the validity of an August, 1984, agreement between defendants. Under the agreement, Tri-Met leased a portion of its Gateway light rail station site to YMCA for the construction and operation of a youth and family center. Plaintiff contends that that proposed "facility * * * will directly compete with plaintiff's members" and that the lease is invalid, because it was not authorized by an ordinance, as plaintiff maintains that ORS 271.360 requires. Defendants moved to dismiss the complaint, asserting that it failed to state a claim. Defendants argue specifically that plaintiff lacks standing and that, as a matter of law, Tri-Met is not subject to the requirement of ORS 271.360 or any other requirement that the lease be authorized by ordinance.[1] The trial court granted the motions, apparently on the basis of both the standing and substantive theories. Plaintiff appeals, and we reverse and remand.

■ Insofar as the dismissal was based on the substantive allegations pertaining to the validity of the lease, it was erroneous. The Supreme Court and we have held repeatedly that a dismissal for failure to state sufficient facts to constitute a claim is not an appropriate disposition in a declaratory judgment action. The inquiry is whether the complaint discloses a justiciable controversy. *See Reynolds v. State Board of Naturopathic Exam.,* 80 Or App 438, 722 P2d 739 (1986), and cases cited there.

■ Insofar as the dismissal was based on standing, however, it is not subject to the same objection. Although defendants nominally raised the standing issue by motions

---

[1] The defendants moved separately and, on appeal, YMCA argues the standing question and Tri-Met discusses the statutory issue. For ease of reference, and because they appear to agree with and adopt one another's arguments, we will not always differentiate between defendants in the remainder of this opinion.

In addition to its allegation of competitive injury, plaintiff alleged that its members have taxpayer standing. The parties do not address that issue in detail here, and we need not consider it, given our disposition of plaintiff's other basis for asserting that it has standing.

asserting that the complaint failed to state a claim, a plaintiff's standing is germane to whether there is a justiciable controversy. As the court explained in *Budget Rent-A-Car v. Multnomah Co.,* 287 Or 93, 597 P2d 1232 (1979):

> "A plaintiff suing under ORS chapter 28 must show that he is a person 'whose rights, status or other legal relations are affected by' the challenged instrument * * *." 287 Or at 95.

When a plaintiff's standing is challenged, the threshold inquiry, in the declaratory judgment context and in many others,[2] is whether the nature of the plaintiff's interest in the action is legally recognizable and is of sufficient magnitude to assure that the courts are not confronted with an abstract controversy and "to assure an adversary proceeding sufficient for adequate presentation of the issues." *See Morse Bros. Prestress v. City of Lake Oswego,* 55 Or App 960, 964, 640 P2d 650 (1982), and cases cited there.

In *Thunderbird Motel v. City of Portland,* 40 Or App 697, 596 P2d 994, *rev den* 287 Or 409 (1979), the most analogous case that the parties or we find, we held that the operator of a motel and restaurant had standing to challenge the city's contract with a competitor, because the "alleged negative effect of *increased competition* is sufficient to confer standing." 40 Or App at 703. (Emphasis in original.) Defendants attempt to distinguish this case from *Thunderbird Motel.* Because the nuances of their argument elude paraphrase, we quote at length from YMCA's brief:

> "In *Thunderbird,* the plaintiff sought to challenge a contract entered into between the city and a private contractor which, in part, provided for the sale of certain property by the city to the contractor upon which a hotel was to be built. The City was to construct tennis courts and a 'skybridge' walkway connecting the hotel, the tennis courts, and a nearby city-owned parking facility. (40 Or. App. at 699). The plaintiff

---

[2] We are mindful of the Supreme Court's admonition that principles of standing and qualifications for remedies are to be located in particular statutes rather than "in generalized notions of 'standing.' " *Rendler v. Lincoln Co.,* 302 Or 177, 180, 728 P2d 21 (1986). It is nevertheless true that some of the general standing principles under the declaratory judgment statute and cases construing it are equally applicable in other contexts. *See Rendler v. Lincoln Co., supra,* 302 Or at 180. The converse is also true. Certain *basic* standing concepts enunciated in cases of other kinds are relevant to declaratory judgment actions, even though the governing statutes make other considerations as well as those basic ones relevant to a plaintiff's standing to seek a declaratory judgment.

challenged the contract on the grounds that its provisions were in violation of the Oregon constitution and that the city lacked authority to enter into such a contract. The plaintiff contended that, by operation of the contract, the city effectively granted the private contractor a subsidy which would tend to increase the contractor's profitability and have an unfair, negative effect upon competition between plaintiff, the Thunderbird Motel, and the planned hotel. (40 Or. App. at 702-703). In his limited context, this court stated that 'the alleged negative effect of *increased competition* is sufficient to confer standing'. ([40] Or. App. at 703) (emphasis original).

"In the immediate case, however, [plaintiff] has taken this court's ruling in *Thunderbird* well beyond its intended bounds. Without more, [plaintiff] has excerpted this court's reference to the 'negative effect of increased competition' as the sole basis for [plaintiff's] allegations of standing. Clearly, when this court referred to the 'negative effect of increased competition', it was referring not to the economic consequences of fair, open competition, but to the negative effect of increased competition generated by a discriminatory subsidy granted to one competitor, but not others. Unlike the complainant in *Thunderbird,* here, [plaintiff] only alleges that its members will be subject to increased competition and that, in itself, such competition will have a 'negative effect' upon [plaintiff's] members. Clearly *Thunderbird* gives no support for such an argument.

"In effect, [plaintiff] has alleged, and it argues here on appeal, that its members have a protectible interest in preserving their current competitive market share; that [plaintiff's] members have a right to deny entry to the marketplace to other legitimate competitors merely upon the ground that, as a matter of self-serving procedure, the contracting district had not passed an authorizing ordinance. Such anti-competitive interests do not find support in law. [Plaintiff] has not, nor can it, allege that Tri-Met's failure to enact a self-authorizing ordinance invades any substantive, legal interest which would convey standing upon [plaintiff] or its constituent members to bring the immediate action."

We understand defendants' distinction to turn on two points, neither of which persuades us. The first is that the governmental involvement, *i.e.,* Tri-Met's entry into the lease, as distinct from YMCA's ultimate construction and operation of the competing facility, is more tangential to the alleged

injury here than were the governmental actions in *Thunderbird Motel* and the other cases that the parties discuss. Defendants' second point appears to be that, unlike the plaintiff in *Thunderbird Motel,* plaintiff seeks to retain a competitive advantage rather than to prevent governmental action which reduces "fair" and "open" competition.

Neither point is relevant to standing. As we have indicated, the focus of the standing inquiry is on the nature and magnitude of the plaintiff's interest. Both of defendants' points are focused elsewhere. The first is concerned with the manner in which defendants' alleged conduct will produce injury to plaintiff's interest, not with whether the interest exists (or is alleged to exist). It is a dubious proposition, in the first place, that the lease and the lessee's ensuing operations can be considered separately; they are parts of one thing that plaintiff alleges will lead to its members' injury. Even if they were separable, however, it is not material to plaintiff's standing whether the consummation of the lease or the resulting use of the property by the lessee is the alleged *direct* cause of the injury to plaintiff's members. *See Morse Bros. Prestress v. City of Lake Oswego, supra,* 55 Or App at 963-64. The questions are whether plaintiff has a legally recognizable and substantial interest and whether that interest can be affected, directly or indirectly, by the events of which it complains. If so, plaintiff has standing to challenge the underlying lease as well as the contemplated use which, allegedly, will immediately produce the harm.

Defendants' second point postulates that some interests in competition are more virtuous than others and that plaintiff's asserted interest is really anti-competitive rather than competitive. Whether or not that is so, it does not affect plaintiff's standing. Defendants do not assert that plaintiff's interest is monopolistic or otherwise illegal. Short of the point that plaintiff's alleged interest can be said to be anti-competitive in ways that make it legally incognizable, plaintiff's interest and its standing cannot be defeated by reason of defendants' or a court's normative views of desirable market dynamics. Nothing in the complaint or, for that matter, in defendants' argument, indicates that plaintiff's interest reaches that point. It is not unlawful to use the judicial process to prevent a competitor from opening its business without having complied with legal prerequisites. Again, the question

is whether the interest exists; whether plaintiff's motives are admirable is beside the point.[3] We reject defendants' arguments which attempt to distinguish this case from *Thunderbird Motel* and other decisions holding that competitive and other economic interests can provide standing.

■     YMCA also argues that plaintiff does not have "representational standing" on its members' behalf. YMCA bases that argument on our decision in *Rendler v. Lincoln Co.,* 76 Or App 339, 709 P2d 721 (1985). After YMCA filed its brief, the Supreme Court issued its opinion on review of our decision. *Rendler v. Lincoln Co., supra,* note 2. The issue was whether an association could be permitted to intervene on behalf of its members in a declaratory judgment action where the plaintiffs sought a declaration that a county road was vacated or abandoned. As relevant here, the Supreme Court said:

> "We see no reason why a claim that the law defines to be collective should not be collectively pursued in the name of an association if it is in fact an interest shared by the members of the association.

> "* * *[T]he underlying questions are, first, whether the asserted collective interest is one that the members themselves could pursue and second, whether the organization is representing the position of its members on the disputed issues. To repeat, in this case the asserted collective interest is defined as a 'public' interest—a public easement—by the substantive law involved, so that only majority support of the membership for the organization's position could arguably become a matter of controversy; we do not deal with an organization's standing to represent the individual interests of some of its members, where the agreement or participation of those members might pose an additional question." 302 Or at 184-85. (Footnote omitted.)

Plaintiff does not base its standing claim on "public interest"; the asserted injury is to the economic interests of

---

[3] The answer *might* be different in an action in which competition or restraints on it were the gravamen as well as the asserted basis for standing. Even then, however, the nature of the interest would more likely be germane to the merits of the action than to standing.

Our discussion assumes but does not imply agreement with defendants' understanding of the quality of the interest that plaintiff asserts. Indeed, the quality of the interest cannot be discerned from the face of the complaint and, unlike *Thunderbird Motel,* there have been no proceedings here which go beyond the face of the complaint.

plaintiff's members. However, if the Supreme Court's *Rendler* decision does not overtly recognize representational standing when only private interests are involved, the opinion also does not foreclose such standing, and the court set out criteria which might be applicable in determining whether a particular association has representational standing in a particular case involving "private" interests. We hold that plaintiff *can* have standing on behalf of its members and that whether it *does* is to be determined in accordance with the tests defined by the Supreme Court in *Rendler*.

█    Defendants also argue that plaintiff did not plead enough facts to show standing under our decision in *Rendler* (or, implicitly, the Supreme Court's). It alleged only its representative capacity and the injury that its members would sustain. We do not agree that that is insufficient to survive a motion to dismiss. The allegations disclose that plaintiff's members have an interest which would give them standing to pursue the action and that plaintiff is acting as their representative on the disputed issues. The other factors which *Rendler* suggests "could become a matter of controversy" are not ultimate facts, but are matters which may become necessary evidentiary support for the ultimate showings of authorized representation and injury to members of the represented class.[4] The complaint sufficiently alleges standing and a justiciable controversy, and the trial court erred by allowing the motions to dismiss it.

Reversed and remanded.

---

[4] We would be loath to accept defendants' argument in any event. The Supreme Court's *Rendler* decision appears to require a different showing for representational standing than our decisions in that case and earlier cases had articulated. *See 1000 Friends of Oregon v. Multnomah Co.,* 39 Or App 917, 593 P2d 1171 (1979). Moreover, *Rendler* was the first case in which the Supreme Court approved *any* form of representational standing, and it had expressly left the permissibility of such standing an open question in *Benton County v. Friends of Benton County,* 294 Or 79, 81-82, 653 P2d 1249 (1982). Hence, neither the existence of nor the requirements for associational standing had been addressed by the Supreme Court at the time when plaintiff pleaded.