Argued and submitted November 24, 1998, affirmed January 27, petition for review denied May 25, 1999 (328 Or 594)

Monte MARSHALL
and Charlotte Mills,
*Petitioners,*

*v.*

CITY OF YACHATS
and Norman Forrester,
*Respondents.*

(97-219; CA A103508)

973 P2d 374

Mary Kim Wood argued the cause for petitioners. With her on the brief was Wallace W. Lien, P.C.

Michael G. Dowsett argued the cause for respondent City of Yachats. Kris Jon Gorsuch argued the cause for respondent Norman Forrester. With them on the brief was Saalfeld, Griggs, Gorsuch, Alexander & Emerick, P.C.

Before Edmonds, Presiding Judge, and Deits, Chief Judge, and Armstrong, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioners seek review of LUBA's decision affirming respondent City of Yachats' approval of respondent Forrester's application for a building permit for a single-family dwelling. We affirm.

The applicable provision of the city's zoning ordinance requires that a lot contain at least 6,000 square feet in order for a single-family dwelling to be permitted on it. As explained in LUBA's opinion, the "square footage of tax lot 2001 [Forrester's property] is either 2,783 or 13,000 square feet, depending on whether or not a portion of the 804 Trail is included in its area." The part of the trail in the vicinity of Forrester's property consists of portions of an unimproved county road that was established in 1890, together with areas that are adjacent to the road and that are subject to a prescriptive public easement. *See Rendler v. Lincoln Co.*, 76 Or App 339, 709 P2d 721 (1985), *aff'd* 302 Or 177, 728 P2d 21 (1986). After the status of the trail was clarified in *Rendler*, Lincoln County transferred its interest in the trail to the State Parks and Recreation Department, which operates a walking trail in the area.

The 2,783-square-foot nucleus of Forrester's property, to which LUBA referred, is immediately adjacent to the trail. The issue is whether the abutting trail area is also part of his lot or, instead, whether it lost its status as the property of Forrester's predecessors when the county road or the prescriptive easement came into being. Relying on a variety of evidence, including the county assessor's maps and the property description in the recorded "correction deed" that Forrester received from Gwen Peterson, who sold the property to him in 1993, the city found that the trail areas were part of the lot and that the lot therefore contained more than the necessary 6,000 square feet.

Petitioners appealed to LUBA, which affirmed the city's approval of the permit, and they now seek our review of LUBA's decision. Respondents and, to some extent, LUBA describe the dispositive question as whether there is substantial evidence in the whole record to support the city's finding that the abutting trail area is part of Forrester's property.

Although petitioners do make a substantial evidence argument, it is ancillary to and becomes almost self-answering in light of the answers to their principal arguments, which are to the effect that the trail areas are not part of the property as a matter of law when the proper legal principles are applied to the evidence. Specifically, petitioners assert that the governmental entities rather than Forrester and his predecessors have the "fee interest" in the trail areas and that, even if the private owners *could* have acquired or retained the fee interest, the various deeds in the chain of title dating from 1948 exclude the trail areas from the conveyances.

In our opinion in *Rendler*, we held that the county road part of the 804 trail was legally established and had not been vacated or abandoned. We further held that the abutting parts of the trail adjoining areas of the road that had been "eroded away" were subject to an "easement by prescription" in the public. 76 Or App at 348. In the particulars relevant here, the Supreme Court's opinion affirming our decision is consistent. *See* 302 Or at 185 (describing public interest as a "public easement").[1]

 Petitioners argue, on a number of grounds, that legal title to the portions of the trail abutting the lot belongs to the governmental entities and the public as a matter of law and, hence, cannot reside in Forrester. Petitioners' arguments extend to both the part of the trail located on the county road and the part that is subject to the prescriptive public right. It is, of course, black letter law that an easement creates a right to use another's land but leaves "title to the land itself * * * in the owner of the fee." *Highway Comm. v. Pac. Shore Land Co.*, 201 Or 142, 153, 269 P2d 512 (1954). None of petitioners' arguments relating to the abutting trail areas that are encumbered by the easement persuades us that Forrester's title cannot include those areas.

LUBA also rejected petitioners' contentions that the abutting areas that were part of the original county road were owned in fee by the county, and now by its state agency successor, and cannot be part of Forrester's lot. In so holding,

---

[1] Based on the characterization of the trial court in *Rendler*, LUBA's opinion generally refers to the trail as a public "right of way" rather than an "easement." Consistent with the two appellate court decisions, we will use the latter term.

LUBA relied on statutes and case law contemporaneous with the establishment of the county road. It cited *Huddleston v. Eugene*, 34 Or 343, 55 P 868 (1899); *Lankin v. Terwilliger*, 22 Or 97, 97 P 268 (1892); and *McQuaid v. Portland & V. R'y Co.*, 18 Or 237, 22 P 899 (1889), for the proposition, summarized in *Lankin*:

> "By the location of the county road over the lands of [the private property owners], the public acquired no more than a right of way as an easement or servitude, with the powers and privileges incident thereto. The fee and all rights of property not incompatible with the public enjoyment as a way remained in the owners[.]"

22 Or at 99. That proposition has been reiterated more recently in *Northwest Natural Gas Co. v. City of Portland*, 300 Or 291, 307, 711 P2d 119 (1985), and *Siegenthaler v. N. Tillamook San.*, 26 Or App 611, 553 P2d 1067 (1976).[2]

Notwithstanding the apparent breadth of the proposition as stated in *Lankin*, there are some circumstances in which governmental bodies acquire title to, as well as the use of, property where public streets are located. *See* ORS 368.366. However, that is not the case here.

From the time of its creation until 1962, when adjustments were made as part of a statewide tax relief program, "property owners were assessed taxes for the portions of 804 running over their land." *Rendler*, 76 Or App at 341.[3] We conclude that, contrary to petitioners' contentions, fee title to the relevant portions of the trail was not in the government or the public but remained in private hands.

■ Petitioners argue next that, even if, as a matter of law, Forrester *could* obtain title to the trail areas, he *did* not; although the areas were included in the corrected deed that Forrester received from Peterson, they were subject to

---

[2] The authorities sometimes indicate that the fee or the right of reversion is in the "owners," and sometimes indicate that it belongs to "abutting landowners." *See* ORS 368.366. The distinction makes no difference here. The trail areas in question abut Forrester's lot, and he is the successor to those whose property would encompass the area if title to them was not acquired by the county in 1890.

[3] The adjustments did not entail a transfer of title.

"exceptions" or terms of similar import in the deeds conveying the property among its various owners since 1948, including the first deed from Peterson to Forrester. However, in *Hurd v. Byrnes*, 264 Or 591, 595-96, 506 P2d 686 (1973), the Supreme Court said that, notwithstanding that the term "exception" in an instrument of conveyance is usually understood to "take something out of the thing granted," there can be ambiguities and concomitant questions of fact as to the meaning and effect of exceptions and related terms, which

> "must be determined from the language of the entire instrument, the situation of the property, and the circumstances indicating the purpose for which the land is conveyed."

(Footnotes omitted.) *See also Tipperman v. Tsiatsos*, 327 Or 539, 964 P2d 1015 (1998).

Hence, in *Hurd*, the court concluded that, despite the use of the word "excepting" in the deed, the grantor did not retain title to, but instead reserved an easement in, the disputed strip of land. In this case, similarly, it is also ambiguous under the circumstances whether the exceptions in the various deeds were meant to exclude the trail areas from the conveyances or merely to denote the encumbrance to which the property was subject. Given that the fee title to both the unencumbered parts of the property and the trail areas belonged to the first of the post-1890 owners, it is at least inferable—if not self-evident—that they, and in turn their successors, intended to convey their entire interest in the property rather than to retain title only to the part of it that was subject to a public use. As LUBA said, in addressing the substantial evidence issue, "[p]etitioners' conflicting evidence of prior deeds that contain language open to interpretation is not sufficient to undermine the city's choice of evidence used to support its conclusion." Similarly, insofar as petitioners' point now is that the deeds containing the exceptions could not convey title to the trail areas as a matter of law, their argument fails. The language of the deeds is ambiguous, and the determination of what was conveyed was subject to evidentiary evaluation and factual resolution. The dispositive questions were for the city as the factfinder to answer.

■ Among the evidence on which the city *did* rely was the correction deed from Peterson, which expressly conveys

title in the trail areas to Forrester. However, the first deed from Peterson had not done so and, petitioners maintain, the correction instrument is invalid under cases holding there must be a mutual mistake for the reformation of a deed to be permissible. *See, e.g., Eley v. Miller*, 166 Or 80, 110 P2d 587 (1941). To whatever extent that argument might have any relevance that survives our rejection of petitioners' contentions concerning the exceptions in the chain of title generally, it is without merit. The cases on which petitioners rely deal with the *judicial remedy* of reformation and with the conditions that must be met for an instrument to be changed over the objection of a party to or interested in the instrument. They have no bearing on situations like the one here, in which a willing seller chose to correct the definition of, and the instrument by which she conveyed, her interest in property to a willing buyer. There was nothing to prevent Peterson from voluntarily executing the second deed, and petitioners offer no convincing basis for challenging its validity.

Petitioners also argue that the 1979 partitioning of lot 2001 from the remaining part of Peterson's original lot was unlawful and that lot 2001 therefore cannot qualify for a dwelling. Assuming the correctness of the other aspects of petitioners' argument, they point to nothing in the city's legislation that requires a legal lot of record as a prerequisite to the granting of a dwelling permit.[4] In the absence of such a requirement, both the legality of the partitioning and the merits of petitioners' collateral attack on it are inconsequential to our review of the city's decision to issue the permit. *McKay Creek Valley Assn. v. Washington County*, 118 Or App 543, 848 P2d 624, *rev den* 317 Or 272 (1993).

As noted earlier, petitioners also make an argument to us that the city's finding on the size of the lot was not supported by substantial evidence in the whole record and that LUBA erred in holding otherwise. However, given our disposition of petitioner's arguments about the legal effect of the

---

[4] In their brief to LUBA, respondents argued that the applicable city zoning ordinance provision does *not* contain such a requirement. LUBA did not expressly deal with the issue, but petitioners contend that it "tacitly" affirmed the city's conclusion that there had been a lawful partition. Because the question can be dispositively answered as a matter of law, a remand to LUBA is unnecessary. *Holland v. City of Cannon Beach*, 323 Or 148, 915 P2d 407 (1996).

evidence, there is little left to the substantial evidence issue. The city's factual determination is supported, *inter alia,* by the pertinent public records, including the recorded correction deed that we have held to be both valid and legally susceptible to a finding of accuracy. Petitioners' specific points in connection with their substantial evidence argument, to the extent they are not redundant of the legal arguments we have rejected, do no more than challenge the weight and credibility of particular items of evidence on which the city did or may have relied. Those points provide no basis for LUBA to reverse the city's finding or for us to reverse LUBA's holding under our respective standards of review. *See Tigard Sand and Gravel, Inc. v. Clackamas County,* 151 Or App 16, 949 P2d 1225 (1997), *rev den* 327 Or 83 (1998).

We have considered petitioners' remaining arguments and reject them without discussion.

Affirmed.